## GREAT LAKES DREDGE & DOCK CO. v. UNITED STATES.

No. 45658.

United States Court of Claims.

June 5, 1950.

Arthur J. Phelan, Washington, D. C., Joseph J. Cotter and Hogan & Hartson, Washington, D. C., on the briefs, for plaintiff.

William A. Stern, II, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

This case is presented to us under rule 39(b) of this court, 28 U.S.C.A.

The defendant says recovery in this case is precluded by the decision of the head of the department on plaintiff's claim. Plaintiff denies this because it says this decision was arbitrary and capricious. If it was not arbitrary and capricious, recovery is precluded under the Supreme Court's decision in United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288; Callahan Walker Construction Company v. United

States, 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49, and other cases.

The sole issue presented is whether or not his decision was arbitrary and capricious.

In the determination of this issue the parties agree that the tentative findings of fact of this court's Commissioner may be taken as true. These findings show the following facts which are material to the determination of this issue.

Plaintiff entered into a contract with the defendant for the construction of a lock and guide walls on the Illinois River about 4½ miles below Peoria, Illinois. The contract provided for the erection of a cofferdam, the dewatering of the area within the cofferdam and the building of the dock and guide walls on dry land within this area. It was supposed that the area within the cofferdam, some 9½ acres, could be dewatered by using well points. However, when these well points were installed, there was encountered subterranean water under considerable hydrostatic pressure which boiled up through the floor of the cofferdam and flooded the area to such an extent that the water could not be drained off by the use of well points. At least, plaintiff was of the opinion that well points would be inadequate to drain off this subterranean water. It called in consulting engineers to get their opinion. These consulting engineers confirmed the opinion of plaintiff's engineers. Since under the specifications all dewatering methods were subject to the approval of the contracting officer, plaintiff then presented the matter to the resident engineer and requested permission to use sumps and pumps in addition to the well points already installed. This was approved by the contracting officer under change orders 12 and 13.

Later, plaintiff abandoned the use of well points altogether and substituted therefor the use of sumps and pumps. This was not approved in writing by the contracting officer, but it was done with his full knowledge and it must be presumed, therefore, that it had his approval.

Even then, so much subterranean water was encountered that the area could not be fully dewatered and it was necessary for the plaintiff to conduct its operations in mud. This made it necessary for plaintiff to use heavy timber mats as a foundation for its machinery, and for the men to work in mud. This made its operations considerably more expensive than either of the parties had contemplated.

Plaintiff requested an equitable adjustment under article 4 of the contract. This article reads as follows: "Art. 4. *Changed conditions.*—Should the contractor encounter, or the Government discover during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the drawings or indicated in the specifications, he shall at once, with the written approval of the head of the department or his representative, make such changes in the drawings and (or) specifications as he may find necessary, and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in article 3 of this contract."

The contracting officer determined that the conditions encountered by plaintiff were no different from what it had reason to expect and he refused to make an equitable adjustment. Plaintiff appealed to the head of the department. The head of the department ruled on October 30, 1937, that "ground water under hydrostatic pressure was encountered to a degree not contemplated by the specifications and in such concentration as to constitute a change in latent conditions within the meaning of article 4 of the contract." [1]

The head of the department directed the contracting officer to determine the amount of the equitable adjustment to which the

1. This ruling was made after practically all of the work had been done. The work was finally accepted by the Government in December 1937.

plaintiff was entitled by reason of the encountering of these unsuspected latent conditions. The contracting officer determined that plaintiff by the use of more well points than it had used could have dewatered the area, notwithstanding the fact that he had approved the abandonment of well points and the substitution therefor of sumps and pumps, and he allowed plaintiff the additional cost of installing these additional well points. He allowed nothing for the extra cost of doing the work in mud. Plaintiff would not accept a change order on this basis, and appealed to the head of the department.

The head of the department sent representatives to confer with the contracting officer and plaintiff's representatives. These representatives of the head of the department determined that plaintiff could not have dewatered the area by the use of that number of additional well points found by the contracting officer, but that it could have dewatered it by the use of about twice as many well points as had been originally contemplated. The contracting officer then computed plaintiff's theoretical additional costs upon the basis of the use of these additional well points, and upon this assumption he found that plaintiff was entitled to an equitable adjustment of $89,936.57, and that it was entitled to an extension of time of 21 days. Still no allowance was made for the extra cost of doing the work in mud, since it was assumed the additional well points would have eliminated the mud. It is conceded that plaintiff's additional cost of doing the work under the conditions encountered was many times the amount allowed by the head of the department.

In the circumstances we conclude that the equitable adjustment allowed by the contracting officer and head of the department was wholly inadequate and was arbitrary and capricious and lacking in that impartiality demanded in the settlement of disputes arising between a plaintiff and the Government. The contracting officer had approved the abandonment of well points as a means for dewatering the cofferdam and the substitution therefor of sumps and pumps. The contract gave him the right to approve or disapprove the method of de-

watering to be followed by the contractor. Having approved the method plaintiff used, that is, sumps and pumps, he was wholly unjustified in computing the equitable adjustment to which plaintiff was entitled on the basis of the use of additional well points, instead of the use of that method which he had approved, and in assuming that by the use of these additional well points the area could have been satisfactorily dewatered. He should have made an adjustment based upon the conditions under which the work was actually done and not under conditions which he supposed could have been obtained. This is especially so since he approved the abandonment of the use of the very instrumentality which in making the equitable adjustment he assumed would have produced better results than plaintiff had been able to obtain by the method he himself had approved.

Under numerous decisions of the Supreme Court, which are quoted or referred to in our recent opinion on motion for a new trial in Penner Installation Corporation v. United States, Ct.Cl., 89 F.Supp. 545, the decisions of the contracting officer and the head of the department are not final and conclusive where they are found to be arbitrary or capricious or so grossly erroneous as to imply bad faith.

On the facts as now presented to us, we are compelled to hold that the decision of the contracting officer and the head of the department in this case on the question of the equitable adjustment to which plaintiff is entitled was arbitrary and capricious and so grossly erroneous as to imply bad faith. When we say that bad faith is to be implied, we mean only what in Penner Installation Corporation v. United States, supra, we said this expression connotes.

We are of the opinion that the plaintiff is not precluded in this case by the findings of the contracting officer and the head of the department and that it is entitled to recover such amount as this court may finally determine is proper as an equitable adjustment on account of the latent conditions encountered which differed from those which plaintiff had a right to expect. We think, however, that plaintiff is limited to a recovery based upon the finding of the

966

head of the department on October 30, 1937, that the latent conditions encountered which entitle plaintiff to an equitable adjustment were those conditions resulting from the fact that it had encountered "ground water under hydrostatic pressure * * * to a degree not contemplated by the specifications and in such concentration as to constitute a change in latent conditions within the meaning of article 4 of the contract." There is no showing that this finding of the head of the department was arbitrary or capricious or grossly erroneous.

The case is remanded to the general docket. The parties will be permitted to file their exceptions to the Commissioner's report and in due course to present the case to the court for final determination.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.