**GREAT LAKES DREDGE & DOCK CO. v. UNITED STATES.**

No. 45658.

United States Court of Claims.

Decided May 1, 1951.

Arthur J. Phelan and Joseph J. Cotter, Washington, D. C. (Hogan & Hartson, Washington, D. C., on the briefs), for plaintiff.

William A. Stern, II, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

In our former opinion, 116 Ct.Cl. 679, 90 F.Supp. 963, 965, we held that plaintiff was "entitled to recover such amount as this court may finally determine is proper as an equitable adjustment on account of the latent conditions encountered which differed from those which plaintiff had a right to expect." We said, however, that "plaintiff is limited to a recovery based upon the finding of the head of the department on October 30, 1937, that the latent conditions encountered which entitle plaintiff to an equitable adjustment were those conditions resulting from the fact that it had encountered 'ground water under hydrostatic pressure * * * to a degree not contemplated by the specifications and in such concentration as to constitute a change in latent conditions within the meaning of article 4 of the contract.'"

When this condition was encountered, it became the duty of the contracting officer under article 4 of the contract to "make such changes in the drawings and (or) specifications as he may find necessary"; whereupon, plaintiff was entitled to "any increase or decrease of cost and (or) difference in time resulting from such changes." However, when these conditions were encountered the contracting officer determined that they were no different from what plaintiff had reason to expect and he, therefore, refused to change the drawings and specifications or to make the equitable adjustment required. It was not until October 30, 1937, that the head of the department reversed the contracting officer and held that latent conditions had been encountered within the meaning of article 4 of the contract. This, however, was just about a month before the work was completed and, therefore, long after the time that any change could be made in the plans or specifications, if indeed any change in the plans and specifications could have been made that would have met the changed conditions encountered.

Article 4, however, clearly contemplates that if latent conditions are encountered materially differing from those specified, in that event plaintiff is entitled to an equitable adjustment based upon the increase in cost resulting therefrom. Article 4 provides that "any increase or decrease of cost and (or) difference in time resulting from such changes" to meet the latent conditions "shall be adjusted as provided in article 3 of this contract." Article 3 of the contract provides for the making of changes in the contract other than those required by the encountering of changed conditions and says that "if such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly."

The equitable adjustment referred to in article 4 of course means that adjustment which is equitable to take care of the increased cost resulting from the unexpected conditions encountered. The question presented to the contracting officer, and now to the court, is what were plaintiff's increased costs and, therefore, what was the equitable adjustment to which it was entitled.

Neither the contracting officer nor the head of the department ever determined what plaintiff's increased costs were, but they did determine what in their judgment was an equitable adjustment. It will be seen, however, that what they determined was an equitable adjustment was not based on plaintiff's actual increased costs resulting from the encountering of these changed conditions, as the contract contemplated. It was based upon a computation of what they supposed plaintiff's increased costs would have been had it adopted the system of using additional well points instead of the system it did adopt, on the theory that the use of these additional well points would have permitted plaintiff to do its work on dry land and would have, therefore, avoided much of plaintiff's actual increased costs. The making of an equitable adjustment on this theory, however, was not a compliance with the provisions of the contract, which

provided that "any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in article 3 of this contract," that is to say, equitably adjusted. The equitable adjustment contemplated by the article, however, was an equitable adjustment based on actual increased cost, and not on what plaintiff's increased costs might have been had some procedure different from that adopted and approved been used to take care of the unexpected conditions.

Under the specifications, in article 2–01 (b), it was provided: "Leakage within the cofferdam area shall be controlled by a system of well points, drains, sumps, and pumps, *as approved by the contracting officer.*" [Italics ours.]

Also in article 3–05 of the specifications it was provided: "* * * Lowering of ground water under foundations shall be accomplished by means of a well-point system, or by such other means as are approved by the contracting officer * * *. Comprehensive plans for all unwatering operations shall be submitted by the contractor for approval of the contracting officer prior to installation."

Plaintiff originally intended to use well points to take care of surplus water, but it was found that the use of these well points punctured the overlying stratum which had held in check subterranean water, and when this stratum was punctured this subterranean water shot up into the cofferdam and flooded it. When this developed the contracting officer approved the abandonment of the use of well points in certain areas by change orders 12 and 13, and the substitution therefor of sumps and pumps. Then later, with the knowledge of the contracting officer, the plaintiff completely abandoned the use of well points and substituted therefor the use of sumps · and pumps.

■ The method of dewatering was subject to the approval of the contracting officer, and, he, at least tacitly, approved the use of sumps and pumps instead of well points. It was, therefore, wholly unwarranted for him and for the head of the department to have made an equitable adjustment based upon what they supposed plaintiff's increased costs would have been had well points been used, instead of what its increased costs actually were, using the dewatering methods actually used and approved by the contracting officer partly expressly and partly tacitly.

■ The making of the equitable adjustment, based upon this supposition of what plaintiff's increased costs might have been, was not a compliance with the contractual requirement. In a case such as this, where the contracting officer approved plaintiff's method of operation, and where we have found that the plaintiff's actual increased costs were necessary and reasonable, we think the contract contemplated that those actual costs, and not the costs of some hypothetical alternative solution of the problem, should be the basis of the equitable adjustment. For this reason, in addition to the reason stated in our former opinion, we think the finding of the contracting officer and the head of the department as to what was an equitable adjustment was not conclusive. He did not determine the equitable adjustment as the contract required, and, hence his determination is not entitled to the conclusiveness accorded by the contract to determinations made in accordance with its terms. Only determinations made in accordance with the contract are conclusive. Helvetia Milk Condensing Co. v. United States, 74 Ct.Cl. 142, 152; Penker Construction Co. v. United States, 96 Ct.Cl. 1, 41; Loftis v. United States, 76 F.Supp. 816, 110 Ct.Cl. 551, 630; Meltzer, Inc., of N. J. v. United States, 77 F.Supp. 1018, 111 Ct.Cl. 389, 483.

In order to show what its increased costs were the plaintiff has produced proof to show what its estimated costs were and what its actual costs were. The difference it has adjusted by certain errors that it admits it had made in making up its estimate, and also certain costs which it admits were not attributable to the encountering of this subterranean water. The balance it claims it is entitled to recover.

We do not think this is correct, in the absence of proof that its estimate of costs was correct. The evidence in the record,

instead of showing that plaintiff's estimate was correct, convinces us that it was not, and that plaintiff had underestimated the cost of the work.

Plaintiff's estimate and bid on the entire job was $1,654,592.50, whereas the Government had estimated that the work should cost $1,729,399.90, or $74,807.40 more than plaintiff's bid. Four other bids were received. The average of these four other bids was $244,743.63 more than plaintiff's bid. Plaintiff's unit price bid on items the cost of which was increased by the encountering of subterranean water was $1,237,206.83. The Government's estimate on these items was $1,371,369.69 or $134,-162.86 more than plaintiff's. The average of the four other bids on these items was $1,552,179.50 or $314,972.67 more than plaintiff's bid.

This indicates that plaintiff underestimated its bid and that a part at least of its loss was due to this fact rather than to the encountering of this subterranean water.

■ We are inclined to think that the fairest basis for determining plaintiff's increased costs due to the encountering of this subterranean water would be to deduct from its actual costs the average of the Government's estimate and the four other bids after eliminating anticipated profits. This average is $1,403,131.75, and we have found that this is approximately what the work should have cost except for the encountering of this subterranean water.

Plaintiff's total cost of performing those items of the contract the cost of which was increased by the encountering of this subterranean water was $1,987,271.15.

Defendant does not contest this figure except to say that some of the items included therein were not due to the subterranean water, but to plaintiff's inefficient operations. We have given careful consideration to the defendant's contentions but find that they are not well-founded, except as appears below.

The largest item contested by the defendant is that of overhead. That amounts to $222,258.78. This is twelve and a fraction percent of the direct job cost. This is quite a sizable item and a rather large percentage, but on the record we cannot say that it is not justified.

There is, however, to be deducted from this figure of $1,987,271.15 the sum of $65,-361.49, the total of extra costs for which plaintiff is responsible. This consists of (1) $14,928.00 recovered from another contractor for maintaining the cofferdam during the installation of the lock gates; (2) $13,577.16 the cost of repairing the steel sheet backwall; (3) $5,242.94 the cost of delay in unwatering the cofferdam; (4) $16,827.19 the cost of construction of an earth dike after the backwall became unsafe; and (5) $14,786.20, the cost of removing sloughed material from the cofferdam. This makes plaintiff's cost of performing those items of the contract the cost of which was increased by the encountering of subterranean water $1,921,909.66. Deducting therefrom the average of the four other bids, after eliminating profit, and the Government's estimate, which amounts to $1,403,131.75, we arrive at an excess cost of $518,777.91. This amount of increased costs over what the job should have cost we think was due to the encountering of this subterranean water, and that plaintiff is entitled to recover this amount, less the sum of $89,936.57 paid it in accordance with change order 21.

■ Plaintiff was assessed liquidated damages in the amount of $19,100.00 for 95½ days' delay in completing the work. However, 68½ days of this delay was due to the encountering of this subterranean water which was an unforeseen condition beyond plaintiff's control. Liquidated damages for this number of days was $13,700.00, with which plaintiff should not have been assessed, and which is to be added to the amount of its recovery.

Plaintiff is entitled to recover a total of $442,541.34. Judgment for this amount will be entered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.