460 A.2d 260

**JOHN F. HARKINS CO., INC.,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 25, 1982.

Filed April 22, 1983.

Petition for Allowance of Appeal Denied Dec. 27, 1983.

426

Martin Horowitz, Philadelphia, for appellant.

Robert W. Maris, Philadelphia, for appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

WIEAND, Judge:

In this appeal we are asked to review the trial court's determination of the amount of increased compensation which a plumbing contractor was entitled to receive after the School District of the City of Philadelphia had temporarily advanced the date for completing a school construction

project. The trial court's award of additional compensation was determined by the difference between the contractor's actual labor costs and the amount of the estimated labor costs included in his original bid, plus 15 percent for profit and overhead. In addition, the court made an award representing a ten percent saving which the contractor might have been able to make on the estimated labor costs contained in his original bid.

On April 28, 1969, a contract was entered between John F. Harkins Co., Inc., appellee, and the School District of Philadelphia, appellant, by the terms of which Harkins was to do the plumbing work in connection with the construction of West Philadelphia University City High School. The contract price was $1,092,920, and the contract terms established a completion date of 1,000 consecutive calendar days following receipt of notice to proceed. After construction had commenced, the school district, in an attempt to achieve an earlier occupancy date, issued a change order accelerating performance of the contract by approximately five months, from January 30, 1972 to September 1, 1971. In order to permit early completion, the district placed Harkins on overtime for a period of 26 weeks. On or about February 1, 1970, the school district revoked its earlier change order and reinstated the original completion date.

The contract between the parties permitted the school district to make changes and modifications so long as they were within the contract's general scope. The contract provided for an "equitable adjustment" by the school district in the event changes or modifications resulted in an increase or decrease in the contractor's cost of performance of the contract. The contract's general conditions, in paragraph 22(b), stipulated as follows:

(b) The determination of the increase or decrease in compensation to be paid the contractor for additions to or reductions to the work, respectively, shall be determined by application of unit prices as set forth in the special conditions of the contract, or, in those cases where unit prices are not applicable, by a lump sum mutually agreed

upon by the Board and the contractor. If, however, unit prices are not applicable, and if the parties cannot agree upon a lump sum then additional compensation to be paid the contractor shall be determined by the actual net cost in labor and materials plus fifteen per centum (15%) for profit and overhead.... The School District will make the final determination as to net cost of labor and materials.

The school district paid the contractor the sum of $57,241 to compensate him for the actual cost of overtime which he paid to his employees. However, Harkins was dissatisfied with this amount and commenced an action in assumpsit to recover additional damages allegedly sustained because of the overtime required before the accelerated completion date was revoked. The trial court, sitting without a jury, entered a general finding in favor of Harkins for $197,907, plus interest. The school district filed exceptions, alleging that the damages awarded by the court were improper and not supported by the evidence. In dismissing the school district's exceptions, the trial judge authored an opinion explaining the manner in which he had calculated damages.

In awarding damages, the trial court had determined the difference between the contractor's total labor costs of $481,803 and its initial bid estimate for labor in the amount of $276,513. This amount had then been reduced by the sum of $57,241 previously paid to the contractor by the school district to compensate him for actual overtime expenses incurred while the accelerated completion date remained in effect. The court had then added to this amount the sum of $27,651, which represented 10 percent of the original bid estimate. This additional sum, the court had concluded, was necessary to compensate the contractor for a built-in or engineered profit margin which might have been realized if the construction project had proceeded according to the original time schedule. Finally, the court had awarded the contractor an additional sum of $22,207, which represented profits and overhead at the rate of 15 percent on the labor overrun. After exceptions had been

dismissed, judgment was entered on the findings of the trial court, and the school district appealed.

The proceeding in the trial court was not an action for breach of contract. It was a claim for an equitable adjustment of the contract price because of the school district's change order which required the contractor to place his employees on overtime to meet an accelerated completion date. The school district had early conceded that an adjustment was necessary because of the contractor's additional labor costs and had paid to the contractor an additional sum of $57,241. This amount had been determined according to actual overtime costs incurred by the contractor, plus profit and overhead. The school district, therefore, denied further liability. At trial, appellant offered no evidence. It argued, however, as it does on appeal, that the contractor failed to prove that it was entitled to recover additional sums. It contends on appeal that the trial court erred by making an award and that in doing so the court adopted a measure of damages which was imprecise, speculative and improper. We agree.

In order to prove additional damages, the contractor showed that his total labor costs had exceeded the estimated labor costs upon which the contract price had been based by $205,290. This measure of damages was a variation of the "total cost" approach which requires that the estimated cost under the contract be subtracted from the actual cost to determine damages.

■ The total cost method of determining damages is "inseparably connected with the rule that the amount of damages need not be ascertained with mathematical certainty to sustain an award in the [contractor's] favor." Rubin, "The Total Cost Method of Computing an Equitable Adjustment—An Analysis," 26 Fed.B.J. 303, 304 (1966). It is premised on the fact that where a contractor is entitled to an adjustment, the governmental body should not be exonerated merely because the contractor is unable to prove his increased costs with precision. However, because the total

cost method of measuring damages is imprecise it is fraught with danger and must be applied with caution.

■ This measure of damages has not been favored by the courts. It " 'has been tolerated only when no other mode was available and when the reliability of the supporting evidence was fully substantiated.... The acceptability of the method hinges on proof that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.' " *Boyajian v. United States*, 423 F.2d 1231, 1243 (Ct.Cl.1970) quoting *W.R.B. Corp. v. United States*, 183 Ct.Cl. 409, 426 (1968). The necessity for showing an accurate bid estimate prior to utilization of the total cost method is basic. In *Great Lakes Dredge & Dock Co. v. United States*, 96 F.Supp. 923, 119 Ct.Cl. 504 (1951), *cert. denied*, 342 U.S. 953, 72 S.Ct. 624, 96 L.Ed. 708 (1952), a case frequently cited in support of the total cost approach, the court considered the amount of an equitable adjustment to which the contractor was entitled on account of latent conditions encountered which differed from those which had been anticipated. The contractor sought to recover the difference between its estimated and actual costs, with certain adjustments. The court found, however, that the contractor's bid had underestimated the cost of the work. Part of the contractor's loss, therefore, was attributable to an underestimated bid and not to unexpected difficulties in completing performance. The court, accordingly, recalculated the estimate and awarded the contractor the difference between his increased costs and the court's determination of what the anticipated job should have cost.

Several years after the *Great Lakes Dredge & Dock Co.* decision, the same court, in *F.H. McGraw & Co. v. United States*, 130 F.Supp. 394, 131 Ct.Cl. 501 (1955), termed the total cost method of calculating equitable adjustments unsatisfactory "because, among other things, it assumes plaintiff's costs were reasonable and that plaintiff was not

responsible for any increases in cost, and because it assumes plaintiff's bid was accurately computed, which is not always the case, by any means." *F.H. McGraw & Co. v. United States, supra* at 400. The Court cautioned, therefore, that the *Great Lakes* decision was "not intended to give approval to this method of proving damage, except in an extreme case and under proper safeguards." *Id.* In *Lilley-Ames Co. v. United States,* 293 F.2d 630, 154 Ct.Cl. 544 (1961), the contractor sought to recover the difference between its bid estimate and costs as a result of the government's providing materials not in accord with the contract specifications. Rejecting the total cost method, the court allowed recovery only for the additional expenditures occasioned by the ill-sized materials. The contractor could not, the court held, include all of its costs arising from the contract's performance as the basis of its recovery. The government was not obliged to reimburse the contractor for all losses, notwithstanding their nature.

Again in *Wunderlich Contracting Co. v. United States,* 351 F.2d 956, 173 Ct.Cl. 180 (1965), the Court of Claims rejected the total cost theory on the grounds that the contractor had failed to establish the government's responsibility for the increased costs incurred. The court found that the only thing shown by the claimant had been the fact that he incurred a significant net loss in performing the contract. There had been no attempt to distinguish between expenses arising out of deficiencies in plans provided by the government and expenses attributable to purely extraneous factors. The court noted that the total cost approach was not to be used to afford the contractor a blanket recovery of all unrecouped costs on the contract, regardless of source. Rather, it remained necessary for the contractor to establish liability, causation and resultant injury. See also: *Boyajian v. United States, supra* at 1236, ("On [the record before the court] it is not possible to conclude that plaintiff's total contract loss, *i.e.,* the difference between plaintiff's contract expenditures and its contract receipts, is reasonably to be equated with the in-

creased costs directly resulting from defendant's alleged breaches."); *G.C.S., Inc. and I.C.S., Inc. v. Foster Wheeler Corp.*, 437 F.Supp. 764 (W.D.Pa.1977), *aff'd*, 578 F.2d 1374 (3d Cir.1978); *G.C.S., Inc. and I.S.C., Inc. v. Foster Wheeler Corp.*, 437 F.Supp. 757 (W.D.Pa.1975).

In 1980, however, the Court of Appeals for the Third Circuit held that the district court for the western district of Pennsylvania had incorrectly rejected the total cost method. It did so in *E.C. Ernst, Inc. v. Koppers Co., Inc.*, 626 F.2d 324, 327 (3d Cir.1980),

> "because we believe that Pennsylvania, if faced with the question, would approve of that approach. Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, only reasonable certainty. *E.g., Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319, 324 (1970). Moreover, evidence of damages may consist of probabilities and inferences. *See generally* 11 P.L.E. *Damages,* § 158. We believe that a method that permits subtraction of contract cost from actual cost satisfies those standards. The objections normally made to the approach, such as that the bid may not be a reasonable estimate, can be adequately handled by making them a question of fact in each case."

■ We have concluded, after reviewing the decided cases and the facts of the instant case, that the "total cost" method of determining damages is imprecise and frequently an inaccurate measure of damages. It should be used only when the circumstances are exceptional. It should not be used unless no other method of determining damages is available and, then, only when its reliability has been established by supporting evidence.

In the instant case, the trial court found that an adjustment based on net cost of overtime plus 15 percent was inadequate to compensate appellee for work done on account of the temporary change order. It also found "no evidence that Harkins' costs were unreasonable or that its bid was inaccurately computed...." Trial Court Opinion at 5. It concluded, therefore, that it had no alternative but to

award damages for the difference between the total labor costs incurred by the contractor and the original estimate of such costs upon which the contract price had been determined.

■■■ Our independent review of the record persuades us that this was error. In the first place, the school district was to be the final arbiter of the contractor's net cost. Pursuant to the provisions of the contract, it made a determination of appellee's net increase in the cost of labor and made payment accordingly. The burden of proving by a fair preponderance of the evidence that additional damages had been incurred was on the contractor. To base an additional award on the "total cost" concept, it was essential for the contractor to prove that its initial estimate had been accurate, that its actual labor costs were reasonable and that the "total cost" measure of damages was reliable. If, as the trial court's opinion implies, there was *an absence of evidence* upon which to base a finding that the initial estimate was either accurate or inaccurate and if it could not be determined from the evidence that the increased labor costs had been caused solely by the school district's change order, an award of total labor costs was improper. The burden was not on the school district to prove the "total cost" approach inapplicable.

The contractor's evidence in this case demonstrated clearly the unreliability of the "total cost" method of determining damages. The construction contract was a multi-year contract. On September 8, 1969, the contractor was required by the school district to accelerate performance by only five months and was placed on overtime for which additional compensation was paid for 26 weeks in the amount of $57,241. On or about February 1, 1970, the school district revoked its change order, reinstated the contract's completion date of January 30, 1972, and instructed the contractor to discontinue the expenditure of moneys to meet the earlier completion date. Despite this relatively brief period of overtime, i.e., five months of a multi-year contract, appellee's total labor costs exceeded his original

estimate by approximately 70 percent. Moreover, between February 1, 1970, the approximate date of the revocation of the change order, and the completion of the contract—a period during which appellee was not required to be on overtime—his labor costs equalled his entire estimated cost of labor.

It seems clear, therefore, either that appellee's initial estimate was inaccurate or that his increased labor costs were caused by factors other than the school district's temporary order accelerating the completion date of the contract. This objective evidence of inaccuracy was not overcome by John Harkins' general testimony, unsupported by documentary evidence and wholly uncorroborated, that appellee's estimate of labor costs was similar to that of other bidders.

■ The trial court also erred when it awarded an additional sum to compensate the contractor for a ten percent built-in or engineered profit margin in his original labor estimate which he believed might have resulted in additional profit if construction had proceeded as originally contemplated. This "engineered saving" was entirely speculative and unwarranted. See: *Oliver-Finnie Co. v. United States*, 279 F.2d 498, 150 Ct.Cl. 189 (1960). See generally: *Nakles v. Union Real Estate Co. of Pittsburgh*, 415 Pa. 407, 411, 204 A.2d 50, 52 (1964) (Evidence of damage for loss of profits "must be reasonably precise so as to provide ... an adequate framework upon which to base a verdict."); *Highway Express Lines, Inc. v. Winter*, 414 Pa. 340, 346, 200 A.2d 300, 303 (1964) ("[T]he law takes cognizance of neither speculative contracts nor speculative damages, but only such as are fixed and definite."); *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 453–454, 197 A.2d 721, 727 (1964) ("[A] claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough."); *Pollock v. Morelli*, 245 Pa.Super. 388, 397, 369 A.2d 458, 463 (1976).

■ For the foregoing reasons we are constrained to conclude that appellee failed to produce evidence from which it could be found that it was entitled to an equitable adjustment in excess of the sum of $57,241 previously paid by appellant-school district. The difference between his estimated cost of labor and his total cost of labor was too imprecise and inaccurate under the circumstances of this case to support an award for additional sums. The award of damages in the amount of $197,907, plus interest, therefore, must be reversed.

Judgment reversed and now entered for appellant.