**In re MEYERTECH CORPORATION, Debtor.**

**SOUTHEASTERN SPRINKLER COMPANY, INC., Plaintiff,**

v.

**MEYERTECH CORPORATION, Defendant.**

**Bankruptcy No. 81–03462G.**

**Adv. No. 83–2301G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 5, 1986.

Murray S. Levin, Joan A. Yue, Pepper, Hamilton & Scheetz, Philadelphia, Pa., and Ben G. Leaphart, Love, Thornton, Arnold & Thomason, Greenville, S.C., for plaintiff, Southeastern Sprinkler Co., Inc.

John C. Fenningham, Gorr, Stevens & Fenningham, Trevose, Pa., and Joseph R. Livesey, Philadelphia, Pa., for the debtor/defendant, Meyertech Corp.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for Creditors' Committee.

---

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue for decision in the case at bench is whether the "total cost method" is the proper measure of damages under a breach of a contract to supply parts for a fire sprinkler system. Due to a failure of proof, as explained below, we conclude that it is not the proper measure of damages in the case before us.

We summarize the facts of this case as follows:[1] Southeastern Sprinkler Company, Inc. ("Southeastern") is in the business of installing water sprinkler systems in shopping malls and related establishments. In furtherance of that activity, Southeastern ordered from the debtor, *inter alia*, fittings for connecting various pipes used in sprinkler systems. During and after the installation of the systems in various premises, leaks were discovered and, under its contract with various property owners, Southeastern warranted the systems it installed. At no charge to Southeastern the debtor supplied improved fittings which did not leak. Southeastern replaced the leaking fittings previously supplied by the debtor with the improved model.

The original fittings supplied by the debtor were not fit for the ordinary purposes for which such goods were used in that they were leaking components in a fire sprinkler system. This defect necessitated the replacement of 4,765 fittings, each of which required one-quarter man-hour of labor, at a cost of $10.00 per man-hour, for a total of $11,912.50.

This result is supported by the Uniform Commercial Code ("UCC") of Pennsylvania which provides as follows:

§ 2314. Implied warranty: merchantability: usage of trade

(a) Sale by merchant.—Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(b) Merchantability standards for goods.—Goods to be merchantable must be at least such as:

\* \* \* \* \* \*

(3) are fit for the ordinary purposes for which such goods are used;

\* \* \* \* \* \*

13 Pa.Cons.Stat.Ann. § 2314(a) and (b) (Purdon 1984). As we stated above, the fittings were not fit for the ordinary purpose for which such goods were used, and hence, the debtor breached its implied warranty of merchantability. The measure of damages for this breach is also provided by the UCC:

2714. Damages of buyer for breach in regard to accepted goods

(a) Damages for nonconformity of tender.—Where the buyer has accepted goods and given notification (section 2607(c)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the breach of the seller as determined in any manner which is reasonable.

(b) Measure of damages for breach of warranty.—The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c) Incidental and consequential damages.—In a proper case any incidental and consequential damages under section 2715 (relating to incidental and consequential damages of buyer) may also be recovered.

13 Pa.Cons.Stat.Ann. § 2714 (Purdon 1984). Under § 2714(c) the measure of damages is the cost of replacing the faulty fittings.

Offsetting this liability to Southeastern is a debt owed to the debtor by Southeastern in the amount of $43,032.32. This results in a net award to the debtor in the amount of $31,119.82.

In reaching this conclusion we considered and rejected Southeastern's primary theory for relief, which is denominated the "total cost method" of accounting for damages. Without considering the offset, Southeastern would have us enter judgment in its favor based on the difference between the actual, aggregate costs of performing the contracts at issue and its initial estimated costs of performing all these projects. Thus, Southeastern believes that the debtor is liable for all of Southeastern's cost overruns on the projects at issue. Southeastern bolsters its theory with testimony that its initial estimates of the cost of a job are typically accurate within 5%. We make the express factual finding that there is inadequate evidence to support the reasonableness of the bid estimates.

The "total cost method" of determining damages requires that the estimated cost under a contract be subtracted from the actual cost to determine damages. *John F. Harkins Co., Inc. v. School District of Phila.*, 313 Pa.Super. 425, 430, 460 A.2d 260 (1983); *E.C. Ernst, Inc. v. Koppers Co., Inc.*, 626 F.2d 324, 327 (3d Cir. 1980). Because the "total cost method" is imprecise, it is fraught with danger and must be applied with caution. *Harkins*, 313 Pa.Super. at 430–31, 460 A.2d 260. The method is not to be used "except in an extreme case and under proper safeguards." *Harkins*, at 430–31, 460 A.2d 260. (quotes and cites omitted). It has been tolerated only when no other mode of proof was available and when the reliability of the supporting evidence was fully substantiated. *Harkins*, at 431, 460 A.2d 260. The method is less than sterling since it is predicated on the assumptions that (1) the plaintiff's costs were reasonable, (2) neither the plaintiff, nor any party other than the defendant, was responsible for *any* increases in costs, and (3) the plaintiff's bid was

accurately computed. *Harkins,* at 432, 460 A.2d 260.

In Pennsylvania the "total cost method" may be used if:

(1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.

*Harkins,* at 431, 460 A.2d 260. (quotes omitted). In applying this method, a dispute on the reasonableness of a contractor's estimate in pricing a job is a question of fact. *Harkins,* at 433, 460 A.2d 260; *Ernst,* at 327–28. Above, we found that there was insufficient evidence to support Southeastern's bid estimates on the construction jobs at issue. The Bankruptcy Rules provide that findings of fact, such as the one at hand, may not be set aside on appeal unless those findings are clearly erroneous. Bankruptcy Rule 8013; *Frank v. Arnold (In Re Morrissey),* 717 F.2d 100, 104 (3d Cir.1983) (applying Rule 8013). Based on our factual findings, we conclude that the "total cost method" is inappropriate for use in the case at bar.

In sum, Southeastern was damaged by the debtor's defective fittings in the amount of $11,912.50. This figure must be offset against Southeastern's liability to the debtor in the amount of $43,032.32. We will accordingly enter judgment in favor of the debtor and against Southeastern in the amount of $31,119.82.