[No. 52560–9.   En Banc.   February 11, 1988.]

SEATTLE WESTERN INDUSTRIES, INC., *Respondent,* v. THE
DAVID A. MOWAT COMPANY, ET AL, *Defendants,*
TIPPETTS–ABBETT–MCCARTHY–STRATTON,
ET AL, *Appellants.*

DON L. COONEY, ET AL, *Plaintiffs,* v. THE CITY OF EVERETT,
ET AL, *Defendants,* SEATTLE WESTERN INDUSTRIES,
INC., *Respondent,* TIPPETTS–ABBETT–
MCCARTHY–STRATTON, ET AL,
*Appellants.*

2

*Diamond & Sylvester,* by *Albert O. Prince, David A. Peters,* and *Terrence I. Danysh,* for appellants.

*Taylor, Bryan & Hintze,* by *Carroll L. Bryan II* and *Mary E. O'Brien,* for respondent.

*Edward L. Mueller, William T. Robinson, Daniel W. Unti,* and *Mark E. Cavanagh* on behalf of Consulting Engineers Council, amici curiae for appellants.

DORE, J.—Following a jury trial, Seattle–Western Industries, Inc. (SWI) obtained a judgment against Tippetts–Abbett–McCarthy–Stratton (TAMS) in the amount of $441,175. We affirm in part and reverse in part.

## FACTS

The dispute between SWI and TAMS grew out of the Merrill–Ring Bridge Reconstruction Project in Everett, Washington. The City of Everett contracted with TAMS to analyze the proposed renovation of the bridge, to develop design alternatives and to complete a final design for the project following the City's selection from the alternatives presented. TAMS subcontracted with the firm of Bush, Roed and Hitchings (BRH) for field surveys of the bridge in connection with TAMS's analysis and design.

Following the selection of a design, the City engaged the David A. Mowat Company (Mowat) as general contractor on the project. The contract between Mowat and the City stipulated that the dimensions stated in the design were not guaranteed and that Mowat was to be responsible for verifying dimensions. Mowat subcontracted the steel fabrication and erection portion of the project to SWI and SWI subcontracted the job of steel erection to the Don L. Cooney Company (Cooney). Both the SWI and Cooney subcontracts provided that the subcontractor was to make field measurements.

TAMS's design called for the fabrication of new trusses, which would support an expanded roadway, to be attached to the existing trusses. In designing the project, TAMS assumed that the vertical members of the existing trusses of the bridge were oriented plumb. Mowat began work in the spring of 1980 and by June had discovered that the existing trusses were not oriented plumb. It did not communicate this to TAMS or SWI. In August, Mowat discovered that the existing trusses were in fact oriented perpendicular to the bridge roadway. This discrepancy resulted in a 4½–inch variance at the bridge piers.

Meanwhile, SWI had begun to cut and assemble the new trusses. SWI was ordered to halt fabrication when the discrepancy in the design was discovered, and in September 1980 was ordered by the City to change the orientation of the vertical portion of the trusses from plumb to perpendicular. SWI was able to resume fabrication in October

1980. Based on a recommendation by TAMS, the City refused to issue SWI a change order (which would have entitled SWI to extra compensation) for the change in orientation. SWI finished fabrication work on the Merrill–Ring Project early in 1981.

SWI had been scheduled to begin work in September 1980, on another job known as the Swamp Creek Project, Phase I. Mowat was the general contractor on this project, and had implicitly approved SWI's plan to complete work on the Merrill–Ring job in time to begin work on fabrication for Swamp Creek. The delay in the Merrill–Ring fabrication led to delays and added expenses in SWI's Swamp Creek work, because SWI was not equipped or staffed to conduct two such projects simultaneously.

SWI sued the City, BRH, TAMS and Mowat and its surety, alleging breach of contract, negligence and misrepresentation. Cooney sued the City, SWI and Mowat and its surety. SWI filed a third party claim against TAMS in the Cooney action. The two lawsuits were consolidated for trial.

Cooney eventually settled with all defendants in its action. SWI settled with all defendants in its action with the exception of TAMS. SWI and TAMS failed to settle the third party claim SWI had asserted in the Cooney lawsuit.

As part of the settlement agreements, SWI received assignments of the other parties' claims against TAMS. The trial court permitted SWI to amend to add only the Cooney claim.

At trial, the jury found TAMS negligent and awarded SWI $596,175. The trial court subtracted the amount SWI had received in settlement and entered judgment for $441,175.

ANALYSIS

TAMS's first contention is that SWI's settlement with the other defendants has the effect of releasing TAMS. We do not agree. TAMS relies on *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983), in which we

held that the last sentence of RCW 4.22.040(1) permits a trial judge to discharge a principal from liability when the victim and the tortfeasor–agent have entered into a settlement. RCW 4.22.040(1) provides in part:

> However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.

The holding of *Glover* must be read in light of RCW 4.22.060(2) which applies directly to the effect of settlements on nonsettling defendants. That subsection provides:

> A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides.

Thus the presumption is that TAMS was not released by SWI's agreements with the other defendants unless this case falls within the narrow limits of *Glover*. It does not. *Glover* was a case of respondeat superior. SWI's claims against the City and BRH are distinct and separate from its claims against TAMS. SWI sued the City for negligence in administering the construction contract. It sued BRH for negligence in performing field surveys of the bridge. SWI's claim against TAMS, however, was for negligence in designing the bridge addition. *See* Annot., *Tort Liability of Project Architect for Economic Damages Suffered by Contractor*, 56 A.L.R.3d 249 (1975). Since *Glover* is inapplicable to this case, permitting SWI's settlement agreements to extinguish TAMS's liability would defeat the legislative goal of the tort reform act, RCW 4.22, which is to encourage settlement while ensuring full compensation to tort victims.

TAMS next contends that the trial court erred in sending the case to the jury because SWI's proof of damages from the Merrill–Ring and Swamp Creek projects was based on an impermissible total cost method of calculation. We disagree.

The total cost method of proving damages consists of subtracting the bid on the project or the estimated cost of completion from the actual total cost. This approach has been termed a "last resort" method of determining damages, and is sometimes permitted only where no better method of proof of damages is available. *See New Pueblo Constructors, Inc. v. State,* 144 Ariz. 95, 696 P.2d 185 (1985); *John F. Harkins Co. v. School Dist.,* 313 Pa. Super. 425, 460 A.2d 260 (1983). The usual objections to the method are that it assumes the initial bid was reasonable and fails to take into account causes of cost overruns other than the defendant's acts. SWI points out that it used a "modified" total cost approach in that it deducted from the total cost minuend whatever additional costs it or its subcontractors caused. *See Nebraska Pub. Power Dist. v. Austin Power, Inc.,* 773 F.2d 960, 966 (8th Cir. 1985). We find nothing objectionable in the proof of damages in this case.

■ The difficulty of calculating damages should not be confused with proof of damage as a necessary element of the plaintiff's case. Once the fact of damage has been established by a preponderance, the plaintiff is obligated to produce only the best evidence available which will afford the jury a reasonable basis for estimating the dollar amount of his loss. So long as the jury is not left to speculate or conjecture, it has wide latitude in calculating damages. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.,* 80 Wn.2d 784, 498 P.2d 870 (1972); *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 774, 440 P.2d 448 (1968).

There is ample evidence in the record to establish the fact of damage here. The Merrill–Ring and the Swamp Creek projects had to proceed simultaneously in a shop that was not equipped for such a volume of work. The effects were described in detail at trial. The work was done later in the year, and under more adverse weather conditions than had been planned. Much of the work was done in temporary shelters. Pieces had to be moved between the

main shop, the temporary facilities and a concrete pad, on which the plan had been diagramed, for custom fitting. To complete both projects, it was necessary to work around the clock.

As to calculation of damages suffered on the Merrill–Ring Project, SWI presented evidence that it was not possible for SWI to segregate the costs of rework caused by the change in truss orientation from normal contract costs. As noted above, SWI deducted the cost overruns caused by it and/or Cooney from the actual cost figure. SWI also offered evidence to show that its original bid and actual costs were reasonable. Regarding the Swamp Creek Project, SWI offered evidence to show its profit on Phase II of the Swamp Creek Project, a job virtually identical to Phase I. SWI also offered evidence that Phase I required 6,000 more man–hours than Phase II. SWI discounted the profit on Phase II by 5 percent to represent cost savings from experience with Phase I, and estimated its loss on Phase I, as a result of the Merrill–Ring rework, to be $180,299. TAMS offered evidence that SWI's damages were less than contended, but the jury was entitled to, and apparently did, disbelieve it. We conclude that SWI presented sufficient competent evidence affording the jury a reasonable basis for calculating the loss to SWI caused by TAMS.

While we find the evidence sufficient to support the award for damages suffered in connection with both the Merrill–Ring and Swamp Creek projects, we cannot say that the evidence was sufficient to support the award of damages for interest on borrowing by SWI during the period at issue. Ordinarily, interest expense is a legitimate element of damage in a negligence action. However, SWI failed to adduce sufficient proof that it would not have taken out the loans but for TAMS's actions. Without proof of causation, the claim for interest expense fails, and we reverse this portion of the judgment.

TAMS also challenges SWI's right to recover damages suffered by Cooney. Cooney assigned its claims against TAMS to SWI as part of the Cooney/SWI settlement and

the trial court permitted SWI to amend to add those claims. Cooney had not named TAMS in its original suit against SWI, the City and Mowat. SWI brought TAMS into that suit by its third party claim. TAMS argues that the direct claims of Cooney against TAMS were barred by the statute of limitations when SWI asserted them in its amended complaint. We agree.

SWI argues that the Cooney claims relate back to the time of its cross claim in the Cooney lawsuit, under CR 15(c). That rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The rule does not apply because Cooney's original complaint alleged only breach of contract. The claim for Cooney's damages resulting from TAMS's design negligence is a distinct claim. Cooney's original contract claims would have involved no proof concerning TAMS's design process at all. Cooney's original complaint did not toll the statute of limitations for the design negligence claim asserted later.

TAMS contends that the trial court erred in failing to give several instructions. First, TAMS submitted "no guarantee", "bad result" and "error of judgment" instructions as follows.

> An engineer does not and cannot insure or in any sense guarantee a satisfactory result, nor is the engineer responsible for unsatisfactory results of his work unless his lack of professional knowledge and skill or his negligent failure to exercise it is the proximate cause of such result. The fact in a particular case that damages resulted is not in itself evidence that the work the engineer performed was improper or that he failed to exercise professional knowledge and skill necessary to proper professional practice, nor is it any evidence that the engineer failed to exercise his skill with reasonable care.

TAMS's proposed instruction 18. Clerk's Papers vol. 2, at 183.

An engineer is not liable for an honest error of judgment if, in arriving at that judgment, the engineer exercised reasonable care and skill, within the standard of care he was obliged to follow.

TAMS's proposed instruction 19. Clerk's Papers vol. 2, at 184.

We approved of the use of such instructions, with certain modifications, in *Watson v. Hockett,* 107 Wn.2d 158, 162–65, 727 P.2d 669 (1986). We did not, however, hold that such instructions must be given in every professional malpractice case. Whether or not to give a particular instruction is a matter within the discretion of the trial judge. *Petersen v. State,* 100 Wn.2d 421, 440, 671 P.2d 230 (1983). The instructions which were given were sufficient to permit TAMS to argue its case, were not misleading and properly informed the jury of the applicable law. No more is required. *Tiderman v. Fleetwood Homes,* 102 Wn.2d 334, 337–38, 684 P.2d 1302 (1984). Considering the instructions as given as a whole, we cannot say that the trial court abused its discretion in refusing to give these supplementary instructions.

TAMS also argues that the trial court erred in refusing to give TAMS's proposed instructions 2, 10 and 39, which set forth various provisions in the City/Mowat contract concerning the contractor's duty to make field measurements. TAMS contends that, without these instructions, it was not able to argue its theories of supervening cause and comparative negligence. We cannot agree. The contract provisions were in evidence. The fact that SWI was bound by the City/Mowat contract was set forth in instruction 16. Clerk's Papers vol. 1, at 37. Instructions 8, 11, 13, 14 and 22 set forth the applicable law concerning comparative fault and causation. The proposed instructions were unnecessary and the refusal to give them was not an abuse of discretion.

TAMS assigns error to the refusal to give its proposed instruction 12, which states that TAMS's contract with the City defines the scope of TAMS's duty to SWI. There was no error in refusing to give this instruction,

because it incorrectly states the law. The scope of an engineer's common law duty of care extends at least as far as the duties assumed by him in the contract with the owner. *Davidson & Jones, Inc. v. County of New Hanover,* 41 N.C. App. 661, 255 S.E.2d 580 (1979); *Moundsview Indep. Sch. Dist. 621 v. Buetow & Assocs.,* 253 N.W.2d 836 (Minn. 1977). It is not true, however, that the scope of the duty is always limited thereby. Additional duties might be assumed by affirmative conduct. *Shoffner Indus. Inc. v. W.B. Lloyd Constr. Co.,* 42 N.C. App. 259, 257 S.E.2d 50 (1979); *Krieger v. J.E. Greiner Co.,* 282 Md. 50, 382 A.2d 1069 (1978); *C.W. Regan, Inc. v. Parsons, Brinckerhoff, Quade & Douglas,* 411 F.2d 1379, 1386–87 (4th Cir. 1969); *see generally* Note, *Architectural Malpractice: A Contract–Based Approach,* 92 Harv. L. Rev. 1075 (1979). There was sufficient evidence to raise a jury question regarding such additional duties in this case. The proposed instruction would have been misleading in that context and would have prevented SWI from arguing its theory of the case. There was no error in refusing such an instruction.

TAMS contends that instruction 12 was given in error because it states that an engineer is required to exercise the skill possessed by others in "the" community, rather than in "his" community, as stated in TAMS's proposed alternative. We see no difference between the two wordings of this instruction. TAMS fails to explain how the instruction as given worked to its detriment. The instruction as given correctly states the law. *Wells v. Vancouver,* 77 Wn.2d 800, 803, 467 P.2d 292 (1970); Restatement (Second) of Torts § 299A (1965). There was no error.

Finally, TAMS is incorrect when it argues that it was prejudiced by the fact that the special verdict form did not set out all the elements of negligence. The instructions properly instructed the jury on negligence, and that is sufficient. *Tiderman v. Fleetwood Homes, supra.*

In its cross appeal, SWI makes two arguments. First, it contends that the trial court erred in directing a verdict against it on its "business devastation" claim. Damages for

lost business profits can be recovered in Washington. *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 774, 440 P.2d 448 (1968); *Berg v. General Motors Corp.,* 87 Wn.2d 584, 555 P.2d 818 (1976). Although SWI presented evidence that its net earnings fell between December 1980 and July 1981, it did not present sufficient evidence showing that this loss was proximately caused by TAMS's negligence. The trial court did not err.

SWI also contends that the trial court erred in refusing to permit it to add claims of the City and Mowat which it took on assignment in the settlement. The trial court did not err here, because there were no cognizable claims to add. SWI does not clearly state what the claims might be, but suggests that Mowat had a breach of contract claim against TAMS. This cannot be, because TAMS and Mowat were never in privity. The only claim asserted by the City was for indemnification. The City's contribution and indemnification rights were extinguished by the settlement agreement, however. RCW 4.22.040(2). Any claim for negligence on behalf of the City or Mowat would be barred by the statute of limitations, as Cooney's was. Therefore, the trial court did not err in refusing SWI's requested amendment.

CONCLUSION

We therefore reverse the portions of the judgment for damages for interest expense and for damages suffered by Cooney. We affirm the judgment in all other respects. The case is remanded to the trial court for entry of judgment in accord with this opinion.

CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

BRACHTENBACH, J. (concurring in part, dissenting in part)—I concur with the majority on all holdings except for approval of damages for the Swamp Creek project damages. I write specially on the Cooney damage claim to explain in more detail why I believe it to be barred.

First, the Cooney damages. These damages represent Cooney's cost overruns on its subcontract with SWI as a result of SWI's breach thereof plus SWI's overhead and profit markup on this amount. TAMS contends that the 3-year statute of limitations, RCW 4.16.080(2), bars SWI's claim for damages on behalf of its subcontractor, Cooney. A more detailed recitation of the procedural context in which this claim of damages arose is necessary for resolution of TAMS' contention.

In March of 1982, Cooney sued SWI, City, Mowat and the bonding company. Cooney alleged its contract with SWI, its full performance, acceptance of its work, and assertion of a lien against the retained percentage. As to SWI, Cooney alleged a breach by SWI of its contract with SWI and claimed a contract amount due of $47,272.78. Cooney sought the same amount in a separate cause of action against all defendants on a theory of unjust enrichment. TAMS was not a defendant.

In answering Cooney's complaint, SWI asserted breaches by Cooney and a counterclaim for extra contract work for Cooney and damages from Cooney's breach of the subcontract. SWI pleaded a third party claim against TAMS by incorporating all the allegations of its amended complaint against TAMS and others, including allegations of TAMS' negligence, and also by asserting a misrepresentation theory.

Thus at this stage of the lawsuit the pleadings consisted of the following: (1) Cooney's suit against SWI and others for contract breach damages; TAMS was not a defendant. (2) SWI's suit against TAMS and others for breach of contract, misrepresentation and negligence. (3) SWI's answer to Cooney's suit, which included a third party claim against TAMS, the latter based upon negligence and misrepresentation. (4) TAMS was a defendant in the SWI suit and a third party defendant through the Cooney suit. Thereafter, SWI settled the Cooney suit against it for a promise to pay $15,000 and agreed to pursue Cooney's claim against TAMS and others and to pay Cooney 20 percent of the entire net

settlement judgment which SWI might recover from TAMS and others. Cooney agreed to cooperate with SWI and to do nothing adverse to SWI's pursuit of the claims.

A few months later SWI settled all of its claims against all defendants except TAMS. SWI received $155,000 as settlement from Mowat, City and BRH. SWI and Cooney agreed that the $155,000 included any amount that SWI owed Cooney under their earlier settlement agreement. SWI agreed it would be liable to Cooney for such sums, and no more, as may be recovered from TAMS by an award to Cooney. Presumably the earlier agreement allocated to Cooney 20 percent of the *entire* judgment against TAMS; the testimony so indicates.

In March 1984, after the 3–year statute of limitations had expired and after the settlements, SWI filed an amended complaint aimed solely at TAMS. SWI sought damages in its own right for $1 million and "by and through Cooney, Mowat and the City" for $1,250,000. SWI and Cooney are alleged to be the real parties in interest against TAMS by virtue of the settlement agreement.

Prior to the amended complaint Cooney had not asserted any claim against TAMS. Arguably, the rather general pleadings would include a claim that TAMS was liable to SWI for SWI's damages caused by Cooney's claim of damages against SWI. However, now TAMS was faced with a direct Cooney negligence claim through SWI's allegation.

To avoid the statute, SWI argues, on behalf of the Cooney damages, that the 1984 amended complaint related back to the original timely third party pleading. CR 15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . .

The conduct, transaction and occurrence which Cooney timely pleaded was a breach of a contract. That case could have been decided solely upon the issue whether the

defendants had breached their contractual obligations to Cooney. In short, had those defendants paid Cooney all the money which he claimed was due? TAMS had nothing to do with that question. More than 3 years later, TAMS is a defendant facing issues of negligent design with respect to Cooney's claim for breach of contract. I agree that SWI's negligence cause of action on behalf of Cooney does not relate back and is barred by the statute of limitations.

Second, the Swamp Creek project. These claimed damages involve SWI's increased costs on the Swamp Creek project—a separate bridge construction project for which SWI had contracted to do the steel fabrication work. TAMS assigns error to the jury award of these damages on two grounds. TAMS first contends that in a negligence action by a subcontractor against the project architect/engineer, any damages beyond those incurred on the specific project are unforeseeable as a matter of law and thus unrecoverable. TAMS also contends that SWI presented insufficient evidence to allow the Swamp Creek damages claim to go to the jury. I do not reach the foreseeability issue because I conclude that there was insufficient evidence that SWI's increased costs on the Swamp Creek project were proximately caused by TAMS' negligence.

Proximate cause is defined as "a cause which in a natural and continuous sequence, unbroken by a new, independent cause, produces the event, and without which that event would not have occurred." *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 935, 653 P.2d 280 (1982). To prove its damages on the Swamp Creek project allegedly caused by TAMS' negligence, SWI divided its work on the Swamp Creek project into two phases and came up with a Phase I overrun by subtracting the expected Phase I hours (estimated by comparing the actual Phase II hours) from the actual Phase I hours. SWI contended that the two phases were similar jobs under nonimpact conditions and that, therefore, the increased labor on Phase I, which overlapped the Merrill–Ring Bridge project during October 1980 through January 1981, was caused by the negligence of

TAMS. SWI's proof of causation also included the following evidence: that its work on the Merrill–Ring Bridge project would have been completed by September 1980 absent the change in truss orientation; that the contracted delivery date for Phase I of the Swamp Creek project was January 1981; that SWI was scheduled to begin fabrication on this project in early fall, after the Merrill–Ring Bridge project was to be completed; and, that TAMS' negligence and the delay on the Merrill–Ring Bridge project, which resulted therefrom, forced SWI to do both the Merrill–Ring Bridge and Swamp Creek projects contemporaneously, thereby compromising the availability of SWI personnel, materials, and floor space and requiring SWI to temporarily expand its facilities and increase its labor forces, all of which adversely impacted its work on both projects.

Assuming that SWI adduced sufficient evidence to indicate that some damage to SWI in the Swamp Creek project was proximately caused by TAMS' negligence, there is insufficient evidence which would afford the jury a reasonable basis for estimating which losses, if any, were caused by TAMS' negligence and which were the result of other factors. SWI made no effort to keep track of its damages or segregate its costs and provided no justification for its failure to do so. Furthermore, in calculating its damages, SWI assumed that its bid costs were realistic and that its work on Phase I and Phase II was substantially similar, thus involving similar labor costs. However, SWI presented scant evidence which would support either assumption. In considering the evidence and inferences therefrom in favor of SWI, I conclude that SWI presented insufficient evidence to support the jury's award of damages on the Swamp Creek project.

PEARSON, C.J., and DOLLIVER and ANDERSEN, JJ., concur with BRACHTENBACH, J.