513 A.2d 1110

Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Trumbull Corporation, Respondent.

Argued May 16, 1986, before Judges BARRY and PALLADINO, and Senior Judge ROGERS, sitting as a panel of three.

*John J. Buchy, Jr.,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel and *Jay C. Waldman,* General Counsel, for petitioner.

*Stuart J. Moskovitz, Berman, Paley, Goldstein & Berman,* for respondent.

OPINION BY JUDGE BARRY, August 11, 1986:

PennDOT entered into a contract with the Trumbull Corporation on September 29, 1980 for the resurfacing of a section of Traffic Route 51 in Allegheny County. The contract involved an estimated amount of base repair and replacement. When PennDOT employees marked the areas where Trumbull was to perform base repair, the quantity marked was much less than the quantity estimated in the contract. Because Trumbull was paid on the basis of unit costs, its compensation under the contract was reduced by $1,670,423.30. Trumbull asked PennDOT to make an adjustment in the contract price because its unit costs were increased as a result of the reduced quantity of work. PennDOT refused to take any action. Trumbull filed a claim for compensation with the Board of Claims (Board). The Board decided in Trumbull's favor in the amount of $220,562.27 plus interest. We must affirm the order of the Board unless it is not in accordance with the law or unless findings of fact are not supported by substantial evidence. *Department of Transportation v. Westmoreland Engineering Co.,* 63 Pa. Commonwealth Ct. 318, 438 A.2d 1005 (1981).

One of the pertinent parts of the contract is Section 109.03 which reads:

MODIFICATION OR ALTERATION IN CHARACTER OF WORK—The drawings and specifications herein referred to may be modified or altered at any time by the engineer in writing if such changes are necessary to up-date, adjust, accept, or fully complete the work contemplated by the contract.

Current and/or additional work involved in such changes will be paid for at the contract unit price. However, if such changes materially increase or decrease the unit cost of the work, or if work not contained in the contract is required, payment will be made as extra work in accordance with the provisions of Section 109.04(c).

The Board made a finding of fact that PennDOT's reduction in quantity caused the size of the patches designated for repair to be smaller than they would have been had the original quantity of work been performed, and that this caused Trumbull's costs to increase. There is substantial evidence in the record to support this finding so we must accept it. It is therefore proper to move to Section 109.04(c) to determine compensation.

Section 109.04(c) reads:

Extra Work. Any work having no quantity and/or price included in the contract, and current or additional work requiring an adjustment in price as provided in Section 109.03, will be performed as extra work, at a price to be negotiated between the engineer and contractor, and ordered in writing by the engineer.

If a fair and equitable unit price or lump sum cannot be determined by the engineer, or where this method of payment is impractical, the engineer will, in writing, order the contractor to perform the work, as extra work on a force-account basis, in accordance with the provisions of Subsection (d).

Trumbull argues that when PennDOT failed to order the work done on a force-account basis it breached the contract and, therefore, damages should be based on the force-account provisions of the contract.[1]

PennDOT argues that there are three methods of determining compensation under 109.04(c). The first is through negotiation. The second is through an equitable adjustment by the engineer. The third is through the force-account provision. This argument is based on PennDOT's interpretation of the phrase concerning a "fair and equitable unit price or lump sum" which it says defines the second method of compensation. A new unit price was not negotiated and the engineer did not make an equitable adjustment. PennDOT argues that, according to the language of 109.04(c), the equitable adjustment method must be impractical or impossible before the force-account method is used and that this condition has not been met.

Whether there are two or three methods of determining compensation matters not in our reaching a decision. Even if we agree with PennDOT's argument that there are three methods and that equitable adjustment must be impractical or impossible before the force-account method is used, we can assume that the method was impractical or impossible because PennDOT failed to use it. Trumbull had no control over the equitable adjustment step so when PennDOT failed to make such an adjustment, it was proper to move to the force-account provisions.

PennDOT argues that recovery is barred by paragraph 4, page 3 of the contract which reads:

---

[1] In general, the force-account provisions set compensation at the contractor's costs plus 25 percent for overhead and profit. The Board made a finding of fact that of the 25 percent, 20 percent covered overhead and 5 percent was profit.

The contractor further covenants and warrants that he has had sufficient time to examine the site of the work; that he has examined the site of the work; that he has had sufficient time to examine the site of the work to determine the character of the subsurface material and conditions to be encountered; that he is fully aware and knows of the character of the subsurface material and conditions to be encountered; and that he has based the within contract prices on his own independent examination and investigation of the site, subsurface materials, and conditions and has not relied on any subsurface information furnished to him by the Commonwealth of Pennsylvania, Department of Transportation.

The present case is not one in which a contractor begins work and subsequently encounters subsurface conditions which increase his costs. The costs were increased as a result of the quantity of base repair which PennDOT designated. Trumbull did not rely on any representation of subsurface conditions. It relied on the estimated quantity of base repair included in the contract. Furthermore, Trumbull could not attempt to examine the subsurface conditions and estimate the quantity of base repair because PennDOT provided no standards by which to determine where work would be needed. The subsurface clause does not apply.

PennDOT next argues that the Board's finding of actionable misrepresentation is error and that Trumbull failed to plead misrepresentation. We need not decide these issues because a finding of misrepresentation is not necessary for compensation to be awarded when methods of compensation are established in the contract which encompass the situation encountered. The Board of Claims merely put Trumbull in the position it would

have been in had PennDOT not breached by failing to order the work done on a force-account basis. It would be necessary to show misrepresentation only if Penn-DOT had not breached the contract and Trumbull had encountered increased costs as a result of representations made by PennDOT.

PennDOT argues that force-account is a modification of the total cost method of computing damages in which the estimated cost under the contract is subtracted from the actual cost to determine damages. They cite a Superior Court case, *John F. Harkins Co. v. School District of Philadelphia*, 313 Pa. Superior Ct. 425, 460 A.2d 260 (1983), which states that total cost should not be used unless no other methods of computing damages are available and unless there is supporting evidence to show that the total cost method is reliable.

*Harkins* can be distinguished from the present case in two respects. In *Harkins*, the school district made an equitable adjustment which did not satisfy the contractor. The school district did not breach its contract. In the present case, PennDOT made no effort to compensate Trumbull for the increased costs, thereby breaching the contract. The Board required use of the force-account method because the breach occurred when PennDOT failed to order the work done according to this method.

The other aspect of *Harkins* which distinguishes it from the present case is that, in *Harkins*, the trial court used a method of computing damages which was not in the contract. The Superior Court was expressing its concern over the use of the total cost method when its use is not called for by the contract. In the present case the force-account method *is* called for by the contract, and PennDOT cannot now complain about the use of the method it agreed to.

PennDOT objects to the use of the Rental Rate Blue Book for Construction Equipment for determining equipment costs. This method was included in the force-account provisions written by PennDOT into the contract. PennDOT cannot claim that the use of Blue Book rates is unfair when its use is called for by a contract written by PennDOT.

PennDOT also argues that Trumbull is entitled to an adjustment in compensation only if its unit costs increased as a result of alterations in the quantity of the work which, in PennDOT's view, Trumbull failed to prove. We have already stated that there is substantial evidence to support the finding of increased costs.

As our review indicates that all of the necessary factual findings are supported by substantial evidence and that no error of law was committed by the Board, we affirm.

ORDER

Now, August 11, 1986, the order of the Board of Claims entered June 26, 1985 at Docket No. 787 is hereby affirmed.