J-A05028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEMPT BROS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLAN A. MYERS, L.P., ARCH INSURANCE COMPANY, AND SAFECO INSURANCE COMPANY OF AMERICA | : | No. 1009 EDA 2020 |
| | : | |
| | : | |
| Appellant | : | |
| | : | |
| ---------------------------------------- | : | |
| ALLAN A. MYERS, L.P. v. | : | |
| | : | |
| | : | |
| HEMPT BROS, INC. | : | |

Appeal from the Judgment Entered March 6, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2012-14292,
No. 2014-00307

| | | |
|---|---|---|
| HEMPT BROS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLAN A. MYERS, L.P., ARCH INSURANCE COMPANY, AND SAFECO INSURANCE COMPANY OF AMERICA - | : | No. 1018 EDA 2020 |
| | : | |
| | : | |
| ---------------------------------------- | : | |
| ALLAN A. MYERS, L.P. v. | : | |
| | : | |
| | : | |
| HEMPT BROS, INC. | : | |
| | : | |

Appellant                  :

Appeal from the Judgment Entered March 6, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2012-14292,
No. 2014-00307

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                           Filed: October 28, 2021

Appellants/Cross-Appellees Allan A. Myers, L.P., Arch Insurance Company, and Safeco Insurance Company of America (collectively, Myers) appeal from the final judgment entered in favor of Appellee/Cross-Appellant Hempt Bros., Inc. (Hempt), following a jury trial and the resolution of post-trial motions in these consolidated actions.  Myers challenges (1) the trial court's denial of its motion for summary judgment; (2) the trial court's denial of Myers' proposed jury instruction concerning total cost damages, (3) the jury's findings concerning damages in four of the eight claims, and (4) the trial court's denial of its motion for compulsory non-suit.  In its cross-appeal, Hempt challenges the pre-judgment interest aspect of the judgment.  For the reasons set forth herein, we affirm in part and reverse in part the trial court's decision on Myers' post-trial motion, vacate the judgment, and remand this matter for a new trial limited to Hempt's damages for overtime for excessive handwork.  Because our decision in Myers' appeal sets aside the judgment, we dismiss Hempt's cross-appeal as premature.

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

The trial court summarized the background of these cases as follows:

[O]n August 28, 2009, the Commonwealth of Pennsylvania, [Myers], and the Pennsylvania Department of Transportation ("PennD[OT]") entered into a contract for the reconstruction of a segment of I-476 (also known as the "Blue Route") located in Montgomery County, Pennsylvania (the "Project"). Myers was the general contractor for the Project. On January 26, 2010, [Hempt] and Myers entered into a written agreement (the "Subcontract"), in which Hempt agreed to perform specific areas of concreate paving work for the mainline and ramps of I-476 from the Schuylkill Expressway to the Mid-County Interchange of the Pennsylvania Turnpike. Hempt was a subcontractor to Myers for the Project pursuant to the terms and conditions of the Subcontract Agreement. Arch Insurance Company ("AIC") and Safeco Insurance Company of America ("Safeco") were Myers' payment and performance bond sureties that furnished statutorily required payment bonds for the project to guarantee the payment of materials and labor supplied or performed on the Project. Liberty Mutual is the successor or assignee of Safeco and as such is obligated to pay or defend claims made against the Safeco Bond.

On or about June 1, 2012, Hempt filed a Complaint against [Myers] and Liberty Mutual for breach of contract, unjust enrichment and failure of the sureties to make payments to Hempt for work done for the Project.[1] On July 11, 2013, Hempt filed a Second Amended Complaint against [Myers]. The Amended Complaint included more specificity regarding the factual averments supporting the breach of contract claim. The Complaint contained three counts: (I) breach of contract against Myers, (II) breach of AIC's bond, and (III) breach of Safeco's bond. The breach of contract claim consisted of two categories:

_____

[1] Hempt's action against Myers was docketed at 2012-14292 in the trial court. Although Hempt initially named Liberty Mutual Insurance Company as a party, the trial court entered an order sustaining preliminary objections, noting that "[u]pon agreement of all the parties, all claims against Liberty Mutual Insurance Company are dismissed," and directing Hempt to file an amended complaint. Order 10/2/12. Hempt did not name or caption Liberty Mutual Insurance Company as a party in its amended complaints. As discussed below, the judgment entered at 2012-14292 disposed of all remaining parties and claims. *See* Pa.R.A.P. 341(a), (b)(1).

claims for additional costs incurred performing subcontract work, including, 1) failing to pay for overtime for excessive handwork, 2) increased costs on account of the batch plant, 3) increased forming and placing costs for concrete paving work, 4) cold weather work, 5) lost production at Plymouth Creek Bridge, 6) concrete overruns, 7) extra grinding work, as well as 8) claims for unpaid estimates. Hempt's claims against AIC and Safeco arose out of their refusal to pay Hempt on behalf of their principal, Myers. Myers filed preliminary objections to the Second Amended Complaint, which the [trial c]ourt denied. On December 20, 2013, Myers filed an Answer to the Second Amended Complaint with New Matter and Counterclaim. On December 22, 2017, Myers filed a Motion for Summary Judgment, which was denied by the Court on August 14, 2018.

On January 6, 2014, [Allan A. Myers, L.P.] initiated a separate action against Hempt in the Montgomery County Court of Common Pleas, case no. 2014-00307 [(2014-00307),] by writ of summons. On July 28, 2017, [Allan A. Myers, L.P.] filed a Complaint against Hempt containing two counts: (1) breach of contract, and (2) quantum meruit. The breach of contract claim was based on alleged inefficiencies of Hempt in failing to timely and fully perform in accordance with the Subcontract and "actively interfering with [Allan A. Myers, L.P.'s] operations on the project[.]" On November 3, 2017, Hempt filed an Answer with New Matter and Counterclaim. [Allan A. Myers, L.P.] filed preliminary objections to Hempt's counterclaim based on pendency of a prior action. By Order dated January 18, 2018, the [trial c]ourt sustained [Allan A. Myers, L.P.'s] preliminary objections to Hempt's counterclaim and defense of setoff in part, on the basis of pendency of a prior action, and consolidated the two, related cases. The [c]ourt directed [Allan A. Myers, L.P.] to respond to Hempt's Counterclaim and New Matter within twenty days after notice of the Order, or, alternatively, for Hempt to withdraw them, in whole or in part, as duplicating claims set forth in the prior, now consolidated action.

The two cases were consolidated and proceeded to a two-week trial before a jury between October 28, 2019 through November 7, 2019; Hempt's claims for breach of contract were presented before the jury and Myers' claims of breach of contract also went to the jury.

Trial Ct. Op., 8/3/20, at 1-3 (record citations omitted).

We add that Hempt's and Myers' respective actions claimed the other party was responsible for delays and other damages during the Project. Specifically, Hempt asserted at trial that Hempt and Myers agreed to negotiate special payments for the "handwork" Hempt needed to complete the concrete work because they could not anticipate the amount of handwork involved when they entered into the Subcontract.[2] *See, e.g.*, N.T. Charge Conference, Closings, Charge (Excerpted Transcript), 11/7/19, at 39.[3] Among other problems during the Project, Hempt referred to Myers' failures to provide a three-and-one-half foot "track line"[4] to permit the operation of Hempt's "slipform" machinery,[5] a site for a concrete batch plant, and access to bridges. According to Hempt, these problems resulted in the need for more expensive handwork and other inefficiencies. *See id.* Myers, in turn, asserted that Hempt breached its obligations under the Subcontract, which resulted in a loss

---

[2] Myers disputed Hempt's interpretation of the Subcontract at trial. However, on appeal, Myers does not challenge Hempt's interpretation of the contract or the jury's findings that Myers breached an agreement with Hempt.

[3] Specifically, Hempt's counsel argued in closing statements that the "question about the concrete paving notes and the 3-foot 6-inch track line permeates almost the entire case, because almost all of the requests for payment that Hempt . . . made is for something that relates to handwork which the contract says will be paid specially." N.T. Charge Conference, Closings, Charge at 39.

[4] *See* N.T., Testimony of Max Hempt, 10/28/19, at 24 (defining a track line as the space need for the tracks of a concrete paving machine to straddle the area being paved).

[5] *See, e.g.*, *id.* at 24 (identifying pictures of concrete paving machines as "slipform pavers").

in the value of its claims against PennDOT and additional costs to complete

Hempt's work.[6]

On November 8, 2019, the jury issued verdicts of $1,735,000 for Hempt

and $665,000 for Myers. In Hempt's action against Myers at 2012-14292, the

jury provided the following relevant answers on the verdict sheet:

> 3. Do you find that Allan A. Myers, L.P. breached the contract by failing to pay Hempt Bros. overtime for excessive handwork on the project?
>
> [Answer: Yes]
>
> 3A. State the amount of damages you award to Hempt Bros. for overtime for excessive handwork:
>
> [Answer: $210,000]
>
> *     *     *
>
> 5. Do you find that Allan A. Myers, L.P. breached the contract by failing to pay Hempt Bros. for increased forming and placing costs for the concrete paving work on the project?
>
> [Answer: Yes]
>
> 5A. State the amount you award Hempt Bros. for failing to pay Hempt Bros. for increased forming and placing costs for the concrete paving work on the project?
>
> [Answer: $530,000]
>
> 6. Do you find that Allan A. Myers, L.P. breached the contract by failing to pay Hempt Bros. for cold weather work?
>
> [Answer: Yes]
>
> 6A. State the amount of damages you award Hempt Bros. for failing to pay Hempt Bros. for cold weather work:

---

[6] The parties and the trial court also refer to the additional costs that Myers assessed against Hempt as "backcharges." **See** Hempt's Brief at 14; Myers' Brief at 29; Trial Ct. Op. at 23 n.6.

[Answer: $126,000].

\*     \*     \*

10. Do you find that Allan A. Myers, L.P. breached the contract by failing to pay for unpaid estimates?

[Answer: Yes]

10A. State the amount of damages you award Hempt Bros. for failing to pay for unpaid estimates:

[Answer: $700,000].

Verdict Sheet, 11/8/19, at 1-2, 4.

In Allan A. Myers, L.P.'s consolidated action against Hempt, the jury answered the verdict sheet as follows:

12. Do you find that Hempt Bros. breached its contract with Allan A. Myers, L.P.?

[Answer: Yes]

\*     \*     \*

14. State the amount of damages you award to Allan A. Myers, L.P. for breach of contract?

[Answer: $665,000]

*Id.* at 5.[7]

---

[7] The following table combines the tables in Myers' brief, **see** Myers' Brief at 12, 14, and compares the claims and damages requested in Hempt's second amended complaint and the jury's award:

| Claim | Hempt's Request | Jury's Verdict |
|---|---|---|
| 1. Overtime for excessive handwork | $210,000 | $210,000 |
| 2. Absence of batch plant | $80,000 | $40,000 |
| 3. Increased forming and placing costs | $530,000 | $530,000 |

*(Footnote Continued Next Page)*

After the resolution of the parties' post-trial motions and motions for pre-judgment interest, Myers praeciped for the entry of a single judgment against it and in favor of Hempt for $1,595,216 plus interest from the date of the judgment.[8]  On March 6, 2020, the clerk of the court entered the total judgment at 2012-14292.

| | | |
|---|---|---|
| 4. Cold weather work | $126,000 | $126,000 |
| 5. Lost production Plymouth Bridge | $40,000 | $40,000 |
| 6. Concrete overruns | $21,000 | $21,000 |
| 7. Extra grinding | $130,000 | $68,000 |
| 8. Unpaid estimates | $1,069,000 | $700,000 |

**See also** Hempt's Second Am. Compl., 7/11/13, at 12, 15, 17-19, 21, 23-24; Verdict Sheet at 1-4.  We note that the parties refer to Hempt's claims by the number indicated in the above table.  **See, e.g.**, Myers' Brief at 9-10 (referring to "forming and placing costs" as "claim 3" and overtime for "excessive handwork" as "claim 1").

[8] Relevant to the single judgment in this case, Myers attached to its praecipe for entry of judgment several of the trial court's post-trial orders, including: (1) a December 11, 2019 order granting Myers' motion for pre-judgment interest but denying all Myers' other post-trial motions; (2) a separate December 11, 2019 order granting Hempt's motion for pre-judgment interest on $1,797,000; (3) a January 9, 2020 order granting Myers' motion for reconsideration, vacating the December 11, 2019 order for pre-judgment interest for Hempt, and recalculating pre-judgment interest for Hempt based on the jury's total verdict in favor of Hempt.  Myers also attached to its praecipe a table subtotaling the additions of pre-judgment interest to Hempt's total verdict and Myers' verdict and then subtracting the Myers' subtotal from Hempt's subtotal.  **See** Praecipe to Enter J., 3/6/20, at 2.

The judgment on the docket at 2012-14292, reflects the following: (1) the total $1,735,000 verdict in favor of Hempt and against Myers; (2) the $665,000 verdict in favor of Allan A. Myers, L.P. and against Hempt, (3) the above-mentioned post-trial orders; and (4) the total judgment of $1,595,216 in favor of Hempt and against Myers.

Myers timely filed a notice of appeal on March 12, 2020, and Hempt timely cross-appealed on April 1, 2020.[9]  ***See*** Pa.R.A.P. 903(a)-(b).  Myers and Hempt complied with the trial court's order to file and serve Pa.R.A.P. 1925(b) statements, and the trial court filed a responsive opinion.

### *Myers' Appeal*

At 1009 EDA 2020, Myers presents six issues that we have reordered for our review:

1. Whether the trial court erred in denying [Myers'] motion for summary judgment on the basis of [Hempt's] failure to comply with express, mandatory written notice requirements in the parties' Subcontract?

2. Whether the trial court erred by failing to give the jury an instruction on the "total cost method" of calculating construction damages with respect to [Hempt's] claim for increased forming and placing costs (claim 3)?

3. Whether the trial court abused its discretion in failing to enter a judgment notwithstanding the verdict, remittitur or a new trial on [Hempt's] claims for increased forming and placing costs (claim 3) and cold weather work (claim 4) where the jury's awards of 100% of each claim were not supported by the evidence?

_____

[9] The single judgment docketed at 2012-14292 resolved issues at both the 2012-14292 and 2014-00307 trial court docket numbers.  Although ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), generally requires the appealing parties to file separate notices of appeal at each docket, the trial court's prothonotary closed the 2014-00307 docket and refused Myers' attempt to file separate notices of appeal at each case.  Myers' Response to Rule Show Cause, 6/18/20, at 5-6.  The prothonotary's refusal to file the separate notice of appeal constitutes a breakdown, and we decline to quash Myers' appeal.  ***See Always Busy Consulting, LLC v. Babford & Co., Inc.***, 247 A.3d 1033, 1042 (Pa. 2021).  Further, because it appears the prothonotary refused to accept filings at the 2014-00307, we also decline to quash Hempt's cross-appeal.  ***Cf. id.***

4. Whether the trial court erred and/or abused its discretion by denying [Myers'] motion for a judgment notwithstanding the verdict, or alternatively for a new trial, on [Hempt's] claims for unpaid estimates (claim 8) in the amount of $1,069,000 where [Hempt's] evidence was speculative, inaccurate and failed to account for payments made by Allan A. Myers, L.P.?

5. Whether the trial court erred or abused its discretion by failing to enter a judgment notwithstanding the verdict, remittitur and/or a new trial on [Hempt's] claim for "overtime for excessive handwork" (claim 1) where [Hempt's] lead witness testified that the claim was calculated "incorrectly," was a "miscalculation" and "needed to be recalculated"?

6. Whether the trial court erred by failing to grant [Myers'] motion for compulsory nonsuit on [Hempt's] claim for unpaid estimates (claim 8)?

Myers' Brief at 9-10.

## **Summary Judgment**

Myers contends that the trial court erred in denying its motion for summary judgment to dismiss six of Hempt's eight claims for damages.[10] Myers' Brief at 58. According to Myers, Hempt admitted that it failed to comply with the notice provision of the Subcontract, and Hempt's response to the summary judgment motion did not raise any issues for trial. *Id.* at 58-62. Further, Myers contends that the trial court failed to consider the entire notice provision and improperly relied on principles from the Uniform Commercial Code. *Id.* at 58. Myers concludes that its summary judgment motion was

---

[10] Specifically, Myers contends that it was entitled to summary judgment on Hempt's claims for overtime for excessive handwork, the absence of batch plant, forming and placing costs, cold weather work, lost production, and extra grinding. Myers notes that the trial court denied summary judgment without explanation and that the court offered its reasons for the first time in its Rule 1925(a) opinion.

based on well-established construction law that the notice provision barred most of Hempt's claims. *Id.* at 64-65.

Hempt notes that it responded to Myers' motion for summary judgment by arguing that the notice provision did not apply to the extra work within the contract and that Myers had actual notice of Hempt's claim. *Id.* at 57. Hempt asserts that the issue of the notice provision was litigated fully at trial and that the jury ruled against Myers. *Id.* at 58. According to Hempt, "Now that [it] has won at trial, it is a metaphysical impossibility that at the summary judgment stage the facts could have been undisputed with no issue of material fact . . . ." Hempt's Brief at 57-58.

In its Rule 1925(a) opinion, the trial court states several reasons for denying Myers' summary judgment motion. First, the trial court asserts that issues of fact warranted "the matter to go to trial on the question of whether Hempt was required to comply with the terms of [the notice provision] of the Subcontract for the unforeseen handwork which was 'to be negotiated' and was not explicitly contemplated by the contract." Trial Ct. Op. at 7. The court reasons, that Hempt's claim for overtime "was not contemplated by the Subcontract and/or outside its scope." *Id.*

Second, the trial court cites the Uniform Commercial Code and refers to Hempt and Myers' "course of performance." *Id.* at 8. The court notes that Myers failed to object based on the notice provision despite "multiple opportunities to do so," and accepted Hempt's work. *Id.*

The principles governing our review are well settled:

- 11 -

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

With respect to the denial of summary judgment, we review the trial court's denial of summary judgment for an abuse of discretion or error of law.

\* \* \*

A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The reasonably qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law.

- 12 -

***Windows v. Erie Ins. Exch.***, 161 A.3d 953, 956-57 (Pa. Super. 2017)

(citations omitted and formatting altered).[11]

Instantly, the Subcontract provided as follows:

**1. _Agreement_**

The SUBCONTRACTOR agrees to furnish all material and perform all work and labor and furnish all tools, equipment and all things necessary for the proper execution of this Subcontract in such a manner as to comply fully with the requirements of the 'Contract Documents' as herein defined.  The 'Contract Documents' for this Subcontract consist of this Subcontract and any Exhibits attached hereto, all Work required of the SUBCONTRACTOR . . . *WITH THE EXCEPTION OF CERTAIN HANDWORK AND 18 FOOT WIDTH PAVING* [italics indicate handwriting].

\* \* \*

1.2 CONTRACTOR RESPONSIBILITIES

\* \* \*

1.2.5 If necessary and available, SUBCONTRACTOR can utilize bridges to access paving areas in a manner that will ensure no damage to the structure.   *UNFORESEEN HAND-WORK TO BE NEGOTIATED.*

\* \* \*

**4. _CHANGES_**

---

[11] This Court has not expressly discussed the issue of mootness and the procedures necessary to preserve an appeal to the denial of summary judgment after litigation at trial.  ***See*** Pa.R.C.P. 227.1.  ***But see Sampathkumar v. Chase Home Fin., LLC***, 241 A.3d 1122, 1135 (Pa. Super. 2020), *appeal denied*, 22 WAL 2021, 2021 WL 2327884 (Pa. 2021).  We add that here, Myers did not preserve its challenge based on the notice provision in its post-trial motions.  However, we will address the merits of Myers' claim. ***See Windows***, 161 A.3d at 957-60.

* * *

Any claim by Subcontractor that any change, changed condition, event or occurrence has affected or will affect in any fashion the work of the Subcontractor, including the time and cost of performance of the work, will be disallowed and is hereby expressly waived by the Subcontractor unless the Subcontractor provides (1) written notice of the change, event or occurrence and impact thereof to the Contractor within seventy two (72) hours of the change, event or occurrence; (2) an estimate of the cost and time impact of the change, event or occurrence; and (3) proper written notice is provided by the Subcontractor to the Contractor before any work is performed relating to the change, event or occurrence. Subcontractor hereby waives any claim for costs or time extensions to the extent it has not fully compiled with the requirements of this paragraph.

R.R. at 269a, 271a, 274a-75a.

Based on the foregoing, we discern no error in the trial court's conclusion that genuine issues of material fact remained. The inclusion of "with the exception of certain handwork" in Paragraph 1 renders the requirements and application of Paragraph 4 ambiguous, because the phrase "certain handwork" was not defined and requirement for notice for "certain handwork" was open to several reasonable interpretations. *See Windows*, 161 A.3d at 956-57. Therefore, it was within the province of the finder of fact—here, the jury—to determine the meaning of the phrase "certain handwork" and the application of Paragraph 4 to that phrase. *See id.* Accordingly, Myers' claim that the trial court improperly denied summary judgment fails.

## Jury Instruction

Myers next claims that the trial court erred in denying its request for a jury instruction explaining the elements of "total cost." Myers' Brief at 22. By

- 14 -

way of background, Myers cited ***John F. Harkins Co. v. Sch. Dist. of Phila.***,

460 A.2d 260 (Pa. Super. 1983) (**Harkins**), and requested the following jury

instruction in support:

> Under the law, the amount of damages suffered by a party need not be proven with mathematical certainty to sustain an award in favor of that party. A party can use different methods to calculate and prove its damages.
>
> In this case, [Hempt] has presented a claim in the amount of approximately $349,000 for increased costs for forming and placing concrete paving on the project. For this claim, Hempt elected to use the "total cost method" to calculate its damages.
>
> The law has certain requirements when the total cost method is used. The total cost method of calculating damages is generally disfavored in Pennsylvania. The method has been allowed only when no other method is available and when the reliability of the supporting evidence was fully substantiated.
>
> In order to recover damages under the total cost method, the party seeking the damages must prove certain elements. The required elements for the total cost method are as follows: (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) [Hempt's] bid or estimate was realistic; (3) its actual costs were reasonable; and (4) [Hempt] was not responsible for the added expenses.
>
> [Hempt] can recover damages on its claim for increased forming and placing costs only if you find that [Hempt] has proven each of the elements that I just listed for you. If you find that [Hempt] has not proven all of the elements, then I instruct you that [Hempt] is not entitled to an award of damages on its claim for increased forming and placing costs and you must find in favor of [Myers] on this claim.

Myers' Proposed Jury Instruction 13.

At the charging conference, the trial court denied Myers' requested

instruction. The court stated that "there was no clear establishment or

contradiction to the methodology used" to calculate Hempt's claim for forming and placing damages. N.T. Charge Conference, Closings, Charge at 7. Myers objected and asserted that it was entitled to its proposed instruction concerning total cost because "the jury has to be told what [Hempt] has to prove to recover on that claim." *Id.* at 9.

In its charge, the trial court issued the following general jury instructions regarding damages:

> If you find that a party breached the contract, you should award an amount of money that will fairly and accurately compensate the aggrieved party for the harm caused by the breach. Generally, damages include the amount of money that would put the aggrieved party in the position it would have been in if the contract had not been breached. It includes not only damages that directly result from the breach, but also those damages that were foreseeable at the time the parties entered into their contract.
>
> *       *       *
>
> Now, damages must be proven by a reasonable certainty. Damages for lost sales or profits may not be based solely on speculation. Specific evidence must be introduced to permit a reasonably certain estimate of the amount lost due to the breach; however, mathematical certainty is not required. If damages are difficult to establish, an injured party need only prove damages with reasonable certainty and any doubt should be construed against the breaching party.

*Id.* at 128, 131.

On appeal, Myers insists that Hempt calculated its damages for forming and placing costs using the total cost method, that is, the difference between its actual cost and its estimated cost for completing the work. Myers' Brief at 23. Myers focuses on two trial exhibits, P-44 and P-45, concerning Hempt's

demand for forming and placing costs. *Id.* at 23-24. Myers asserts that those exhibits establish that Hempt's demands reflect the difference between its actual costs and original bid. *Id.* at 24-27. Additionally, Myers contends that Hempt's witness described using a total cost method and that Myers' expert confirmed that Exhibits P-44 and P-45 reflected Hempt's use of the total cost method. *Id.* at 27-31.

According to Myers, the trial court misconstrued the law and the trial record when denying Myers' proposed total cost jury instruction, and the absence of the instruction prevented the jury from properly considering whether Hempt was entitled to damages and the appropriate amount of damages. *Id.* at 37-41. Myers concludes the trial court should have granted a new trial. *Id.* at 41.

Hempt asserts that it did not use a total cost method to determine its damages for forming and placing. Hempt's Brief at 50. Hempt relies on its trial theory that the Subcontract entitled it to seek special costs for handwork necessary to complete the concrete work when Myers failed to provide an adequate space for Hempt to use its machinery. *Id.* at 47, 50. Hempt concludes that it provided a basis for the jury to award damages based on handwork, that the jury's determination of the forming and placing damages was reasonable, and that this Court should not "retry" the facts. *Id.* at 47, 51.

In its Rule 1925(a) opinion, the trial court concludes that it properly denied Myers' proposed total cost jury instruction concerning forming and

placing costs. Trial Ct. Op. at 9. The court explains that it rejected the instruction because it did "not want[] to mislead the jury." *Id.* The court reasons that a total cost method was not at issue at trial, noting that "although which party bore the ultimate responsibility for what caused Hempt to incur these expenses varied, the evidence overwhelmingly suggested that many expenses were outside of Hempt's control, that they were actually the result of inefficiencies caused by Myers . . . ." *Id.* at 11. The court adds that "*Harkins* was not a breach of contract case, as we have here, but rather a claim for equitable adjustment of the contract price." *Id.* at 11 n.2. Further, the court notes that Myers does not assert error in its instruction directing the jury to award damages that fairly and accurately compensate the aggrieved party for the harm caused by the breach and that damages must be proven by a reasonable certainty. *Id.* at 12.

Our review of the trial court's denial of a motion for a new trial is well settled: "Trial courts have broad discretion to grant or deny a new trial and, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Banohashim v. R.S. Enters., LLC*, 77 A.3d 14, 22 (Pa. Super. 2013) (citation omitted and formatting altered).

Additionally, our review of jury instructions is governed by the following principles:

> Our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling

- 18 -

the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse, rather than clarify a material issue, that error in a charge will be found to be a sufficient basis for the award of a new trial. [A] charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. [Furthermore,] in reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 962-63 (Pa. Super. 2016) (*Salsgiver*) (citations omitted and formatting altered).

When reviewing the trial court's refusal to give a specific instruction, this Court must also

determine whether the record supports that decision. In fulfilling this role, we must keep in mind that a trial court should charge on a point of law when there is some factual support in the record for the charge. We have stated:

The charge of the trial court should not exclude any theory or defense that has support in the evidence. Moreover, where there is a dispute as to what the relevant facts are, this dispute must be submitted to the jury along with instructions on points of law which, with a view to the evidence in the case, are relevant.

*Meyer v. Union R. Co.*, 865 A.2d 857, 866 (Pa. Super. 2004) (citations omitted and formatting altered).

In *Harkins*, a school district appealed the trial court's award of damages to a contractor, which the court calculated based on the difference between a

contractor's total labor costs and initial bid estimate for labor. *Harkins*, 460 A.2d at 262. The *Harkins* Court noted that "the proceeding in the trial court was not an action for breach of contract" but a "claim for an equitable adjustment of the contract price" because the district accelerated the completion date of the project. *Id.* This Court reversed the trial court's award and entered a judgment in favor of the district. *Id.* at 266.

The *Harkins* Court explained:

The total cost method of determining damages is inseparably connected with the rule that the amount of damages need not be ascertained with mathematical certainty to sustain an award in the contractor's favor. It is premised on the fact that where a contractor is entitled to an adjustment, the governmental body should not be exonerated merely because the contractor is unable to prove his increased costs with precision. However, because the total cost method of measuring damages is imprecise it is fraught with danger and must be applied with caution.

This measure of damages has not been favored by the courts. It has been tolerated only when no other mode was available and when the reliability of the supporting evidence was fully substantiated. The acceptability of the method hinges on proof that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses. The necessity for showing an accurate bid estimate prior to utilization of the total cost method is basic.

*Id.* at 263 (citations and formatting altered).

The *Harkins* Court reviewed the existing case law and concluded that

the total cost method of determining damages is imprecise and frequently an inaccurate measure of damages. It should be used only when the circumstances are exceptional. It should not be used unless no other method of determining damages is available

- 20 -

and, then, only when its reliability has been established by supporting evidence.

*Id.* at 264 (formatting altered).

In *Com., Dep't of Transp. v. Trumbull Corp.*, 513 A.2d 1110 (Pa. Cmwlth. 1986) (*Trumbull*),[12] the Commonwealth Court considered a PennDOT appeal from a Board of Claims award to a contractor who claimed that PennDOT's reduction of the quantity of work resulted in an increase in its unit costs. *Trumbull*, 513 A.2d at 1111-12. PennDOT asserted on appeal that the Board's award of damages constituted an improper use of a variant of the total cost method referred to as the force-account method.[13] *Id.* at 1113. The *Trumbull* Court reject PennDOT's argument, noting:

> *Harkins* can be distinguished from the present case in two respects. In *Harkins*, the school district made an equitable adjustment which did not satisfy the contractor. The school district did not breach its contract. In the present case, PennDOT made no effort to compensate Trumbull for the increased costs, thereby breaching the contract. The Board required use of the force-account method because the breach occurred when PennDOT failed to order the work done according to this method.
>
> The other aspect of *Harkins* which distinguishes it from the present case is that, in *Harkins*, the trial court used a method of computing damages which was not in the contract. The Superior

---

[12] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) (citation omitted).

[13] "In general, force account work is additional to that called for by the contract, ordered to be done by [PennDOT] and agreed to be paid for on a time and material basis." *Green Const. Co. v. Dep't of Transp.*, 643 A.2d 1129, 1131 n.1 (Pa. Cmwlth. 1994) (citation omitted).

Court was expressing its concern over the use of the total cost method when its use is not called for by the contract. In the present case the force-account method is called for by the contract, and PennDOT cannot now complain about the use of the method it agreed to.

*Id.* at 1113.

Instantly, we conclude that the trial court's denial of Myers' request for a total cost jury instruction merits no relief. Firstly, the present case is closer to **Trumbull** than **Harkins**. The present case does not involve an equitable adjustment from a public agency, and the jury's verdict in this case demonstrates that it accepted Hempt's claim that Myers breached an agreement to pay for certain handwork. **See id.** Therefore, like **Trumbull**, **Harkins** is distinguishable from the present case.

Secondly, even if Myers' evidence entitled it to a total cost jury instruction, **see Meyer**, 865 A.2d at 866, a review of the record reveals no basis to conclude that Myers suffered prejudice. **See Salsgiver**, 150 A.3d at 963. As noted by the trial court, Myers did not object to the court's instruction that damages for a breach of contract need not be ascertained by a mathematical certainty, but that specific evidence must be introduced to permit a reasonably certain estimate of the amount lost due to the breach. **See** Trial Ct. Op. at 12; N.T. Charge Conference, Closings, Charge at 128, 131. Myers presented evidence, and was free to argue to the jury, that (1) Hempt's methodology for assessing damages for forming and placing concrete was unreliable, (2) alternative methods for determining damages were more accurate, (3) Hempt's original bids were too low and its actual costs were too

high, resulting in a claim for excessive damages, and (4) Hempt was responsible for its own increased costs. The jury, which was properly instructed on the standard breach of contract damages, was likewise entitled to reject Myer's evidence that Hempt's evidence was too speculative and credit Hempt's evidence as reliable and reasonable. Therefore, because Myers has failed to demonstrate prejudicial error in the trial court's denial of its requested total cost instruction under the circumstances of this case, we agree with the trial court that a new trial on this basis is not warranted.

## JNOV, New Trial, Remittitur

Next, Myers asserts that it is entitled to a judgment *non obstante veredicto* (JNOV), a new trial, or remittitur on four areas of damages: (1) forming and placing concrete, (2) cold weather work, (3) unpaid estimates, and (4) overtime for excessive handwork.[14]

## Standards of Review

The following principles govern our review. As to JNOV and a new trial, we note:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When

---

[14] We note that Myers does not separately analyze each theory for relief, *i.e.*, JNOV, new trial, and remittitur, for each area of damages.

We add that the trial court's Rule 1925(a) opinion and Myers' brief addressed the damages for forming and placing concrete and for cold weather work as a single issue. However, our review considers these damages separately, as Hempt presented them to the jury.

reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

**Wag-Myr Woodlands Homeowners Ass'n By Morgan v. Guiswite**, 197

A.3d 1243, 1252 (Pa. Super. 2018) (citation omitted).

As to remittitur,

[o]ur standard of review from the denial of a remittitur is circumspect and judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. Furthermore, the decision to grant or deny remittitur is within the sole discretion of the trial court, and proper appellate review dictates this Court reverse such an Order only if the trial court abused its discretion or committed an error of law in evaluating a party's request for remittitur.

*Renna v. Schadt*, 64 A.3d 658, 671 (Pa. Super. 2013) (citations omitted and formatting altered).

**Forming and Placing Concrete**

Myers challenges the reliability of Hempt's evidence regarding the costs of forming and placing concrete.[15]  Myers' Brief at 54.  Specifically, Myers contends that Hempt's use of an average actual cost of $13.71 per square yard on Exhibit P-44 was unreliable because Hempt's witness gave inconsistent prior statements.  *Id.*  Myers notes that Hempt's Vice President of Operation, Albert Tompkins, testified at trial that he calculated the average actual cost based on work at all locations.  *Id.*  Myers emphasizes that Tompkins testified at his deposition that the $13.71 average may have been calculated based on one bridge.  *Id.*  According to Myers, Tompkins acknowledged the inconsistency between his trial and deposition testimony concerning the basis of his calculation of the average actual cost.  *Id.* at 54-55.

Myers continues that the average actual cost was critical to the proper determination of damages for forming and placing concrete and asserts that "[n]o reasonable person could believe anything about the actual cost figure because the person who made it lied in court and admitted.  He said 'black' in his deposition and 'white' in court.  The entire claim should have been rejected." *Id.* at 55.

---

[15] The jury separately found damages for forming and placing concrete on Question 5A of the verdict sheet.

Hempt responds that it provided competent evidence establishing "what [its] unit costs were for machine paving and what its costs were for handwork performed, that is, it relied on its bid cost for machine paving and compared it to the actual cost of hand paving."  Hempt's Brief at 49.  Hempt does not squarely address Myers' focus on the inconsistency between Tompkins' trial and deposition testimony.  *See id.* at 36-50.

A review of the record confirms Myers' assertion that Tompkins gave inconsistent trial and prior testimony concerning the basis of his $13.71 figure, which appears on several pages of Exhibit P-44.  However, contrary to Myers' argument, the impeachment of Tompkins on this limited area does not request the rejection of Hempt's entire claim for damages for forming and placing concrete.  *See* Myers' Brief at 55.  Moreover, Myers failed to present any alternative estimate for the work completed by Hempt or any other affirmative evidence that Tompkins' use of the total handwork cost of $13.71 on portions of Exhibit P-44 was objectively unreasonable.  For these reasons, Myers fails to establish a clear basis for JNOV or an abuse of discretion in the trial court's decision to deny Myers' motions for a new trial or remittitur.  *See Guiswite*, 197 A.3d at 1252; *Renna*, 64 A.3d at 671.  Therefore, Myers' challenge to the forming and placing damages merits no relief.

**Cold Weather Work**

Myers next claims that Hempt's evidence of damages for cold weather work was speculative.[16]  Myers' Brief at 55.  Myers asserts that at trial, Hempt relied on its demand letter that listed the alleged work and materials for cold weather work.  *Id.*  Myers contends that the demand letter lacked any substantiation such as payroll records, invoices, or bills paid.  *Id.*  Myers adds that Hempt did not state where it allegedly performed the cold weather work. *Id.*

Hempt responds that the Subcontract specified a unit price for cold weather work performed by Hempt, which it used to calculate its damages. Hempt's Brief at 53.  Hempt emphasizes that Myers failed to ask for additional information and seeks relief based solely on matters discussed in cross-examination without offering direct contradicting evidence.  *Id.* at 54.

Following our review, we conclude Myers' arguments fail to establish any basis for JNOV, a new trial, or remittitur.  Myers challenges only the credibility and weight of the evidence presented by Hempt.  However, the jury as factfinder was entitled to accept or reject Hempt's evidence of the cold weather work damages.  Therefore, no relief is due as this Court will not substitute our judgment for that of the factfinder.  *See Guiswite*, 197 A.3d at 1252; *Renna*, 64 A.3d at 671.

### Unpaid Estimates

---

[16] The jury separately found damages for cold weather work on Question 6A of the verdict sheet.

Myers next contends that Hempt's claim for unpaid estimates was contrary to the evidence. Myers' Brief at 55. Myers asserts that the evidence clearly established that Hempt's claim for unpaid expenses failed to account for payments Myers issued and, therefore, Hempt's damage claims were inaccurate. *Id.* at 56. Myers focuses on Hempt's concession at trial that it received a check from Myers but continued to insist on a full recovery of its original request for damages. *Id.* at 57.

The trial court addressed this issue as follows:

Myers' defense points to an excerpt of [Hempt's contracts administrator, Kerry DeLizio's] testimony on cross-examination wherein he admitted that Myers paid a check of $293,721.11 to Hempt that was not applied to the unpaid estimates. Indeed, DeLizio admitted to deducting backcharges from the unpaid estimates at the time he made the calculations. Notably, however, the jury did not award the full $1,069,000 claim for unpaid estimates. The jury awarded only $700,000 to Hempt as damages for Myers' failure to pay unpaid estimates. . . . In fact, the jury compensated Myers for this error in fashioning its award. Accordingly, there was no error or abuse of discretion in denying Myers' request for JNOV, new trial, or remittitur on that basis.

Trial Ct. Op. at 20.

We conclude that the trial court properly considered Myers' issue concerning unpaid estimates damages. Myers' repetition of its cross-examination and arguments to the jury in this appeal fails to establish any error of law or abuse of discretion in the trial court's denial of Myers' post-trial motions. *See Guiswite*, 197 A.3d at 1252; *Renna*, 64 A.3d at 671. Accordingly, Myers' challenge to the jury's award for unpaid estimates fails.

**Overtime for Excessive Handwork**

Myers also contends that the jury's award of damages for Hempt's claim for overtime for excessive handwork was improper. Myers' Brief at 42. Myers argues that during cross-examination, DeLizio conceded that he used an incorrect labor rate when calculating overtime for excessive handwork. *Id.* at 44. Specifically, Myers notes that DeLizio testified that he erroneously used the full time-and-a half-rate in his calculations when he should have excluded the base wage and used only the premium for overtime. *Id.* at 44-50. Myers concludes that it is entitled to a new trial or remittitur on the damages for overtime for excessive handwork. *Id.* at 53.

Hempt responds that Myers' argument essentially asks this Court to disturb the jury's findings by reweighing the evidence. Hempt's Brief at 52. Hempt asserts that Myers' cross-examination of DeLizio asked "the jury to make an all-or-nothing determination" of damages for overtime for excessive handwork and that the "jury chose all" by awarding Hempt all damages it requested for this item. *Id.* at 51-52. Hempt continues that because its proof of damages for overtime was sufficient, this Court should affirm. *Id.* at 52.

The trial court asserts that it properly denied Myers' request for post-trial relief. Trial Ct. Op. at 14. The court acknowledged Myers' cross-examination of DeLizio's calculations of the overtime rates. *Id.* at 16. However, the court describes the testimony of Hempt's witnesses concerning overtime costs for excessive handwork as "more nuanced" than suggested by Myers. *Id.* The court concludes that "the jury likely found [Hempt's

witnesses] more credible" and "[b]ecause the evidence substantiated the overall claim, the [c]ourt did not disturb the jury's verdict." *Id.* at 16-17.

Instantly, the trial record shows the following. In support of the overtime for excessive handwork, Tompkins, Hempt's Vice-President of Operation, testified that he and a representative of Myers reached an agreement that Myers would pay for overtime during a conversation at the site of the Project.[17] Hempt then presented numerous demand letters that it sent to Myers. Those letters included: (1) a September 1, 2010 letter seeking $147,270.91 (Exhibit P-35); (2) a February 1, 2011 letter seeking $42,376.04 (Exhibit P-42); (3) an August 4, 2011 letter seeking $9,064.79 (Exhibit P-60); (4) a September 12, 2011 letter seeking $3,710.00 (Exhibit P-64); (5) an October 18, 2011 letter seeking $3,876.88 (Exhibit P-71); and (6) an October 27, 2011 letter seeking $2,712.08 (Exhibit P-72).[18] Hempt therefore sought, and the jury found, $210,000.00 for overtime for excessive handwork on Question 3A of the verdict sheet. *See* Verdict Sheet at 1.

During Myers' cross-examination, DeLizio conceded the error in his calculations that he improperly used a full time-and-a-half rate in Exhibit P-35, Hempt's September 1, 2010 letter seeking $147,270.91 from Myers. Further, Myers called its expert witness, Tim Van Noy, who testified using the full time-and-a-half rate would be improper if the work for which Hempt

---

[17] We add that Tompkins did not testify regarding the appropriateness or accuracy of DeLizio's calculations of the overtime payments due.

[18] The amounts stated in the exhibits add to $209,010.70.

claimed overtime fell within the scope of the Subcontract. N.T., Testimony of Kerry DeLizio, Tim Van Noy, and Defendants' Motion for Compulsory Nonsuit, 11/4/19, at 187. Specifically, Van Noy stated:

> [I]f the work is . . . is within the scope of the contract then, in theory, you should only claim the additional piece, the premium portion, when you put your claim together. Because they were going to work the base contract hour anyway. So that's typically how it's done.
>
> The only time you would ever claim both the premium and the base portion of it is if you're calling the work all extra work; in other words, the hour that was worked was outside of scope and it was worked at a premium time. So then you would claim the entire piece.

*Id.* at 187-88. Van Noy stated that Hempt claimed the full time-and-a-half rate, but that he was unable to determine whether the Hempt's overtime work fell within or outside the scope of the Subcontract. *Id.* at 188-89.

Based on this record, we are constrained to conclude that the trial court abused its discretion when assessing the trial evidence concerning Hempt's damages for overtime for excessive handwork. The court asserted that Myers' impeachment of DeLizio revealed a limited miscalculation of the overtime rate on a few pages of Exhibit P-35. However, that exhibit alone reflected Hempt's demand for $147,270.91, which was over half of the entire $210,000.00 demanded by Hempt and found by the jury on Question 3A of the verdict sheet. **Compare** Ex. P-35 at 1, **with** Hempt's Second Am. Compl., 7/3/13, at 12, **and** Verdict Sheet at 1. Moreover, nothing in DeLizio's testimony and Hempt's remaining exhibits provided a reasoned basis to determine if DeLizio's

calculations of damages were proper as to Hempt's demands for payments for overtime for excessive handwork. In fact, on cross examination, DeLizio conceded that some of his calculations were erroneous.

For these reasons, the record does not support the trial court's decision to deny Myers' post-trial motion concerning the jury's decisions to award the full measure of damages that Hempt claimed for overtime for excessive handwork. Even viewing the evidence in the light most favorable to Hempt as the verdict winner, we are constrained to conclude that a new trial could produce a different verdict than the jury's verdict on Hempt's requested damages on Question 3A of the verdict sheet. Therefore, we reverse the trial court's order denying Myers' post-trial motion for relief concerning the overtime damages. Accordingly, we conclude that Myers is entitled to a new trial on damages for overtime for excessive handwork.[19] *See Guiswite*, 197 A.3d at 1252; *see also Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410, 417 (Pa. Super. 2004) (declining to award remittitur when "it would be arbitrary" based on the record).

### Compulsory Non-Suit

---

[19] Although not meaningfully developed by Myers, we note that we discern no error in the trial court's decision to deny Myers' request for JNOV to vacate the entire award. As discussed herein we have concluded that a new trial is required to determine Hempt's damages for overtime for excessive handwork. We emphasize that Myers' appeal does not challenge the jury's finding on Question 3 of the verdict concerning the breach that resulted in the damages for overtime for excessive handwork. *See* Verdict Sheet at 1.

Myers also contends that the trial court erred in denying its motion for compulsory non-suit on Hempt's claim for unpaid estimates damages. Myers' Brief at 57. Myers insists that Hempt's unpaid estimates damages constituted a liquidated claim. *Id.*

We determine that this claim is waived. In its motion for compulsory non-suit, Myers asserted that Hempt failed to account for Myers' payments and back charges. *See* N.T. Testimony of Kerry DeLizio, Tim Van Noy, and Defendants' Motion for Compulsory Nonsuit at 146-150; Myers' Brief in Support of Motion for Reconsideration, 11/6/19, at 2-5; N.T. Charge Conference, 11/6/19, 14-15. Similarly, in its Rule 1925(b) statement, Myers only asserted that "[b]ased on the evidence [Hempt] presented at trial, no reasonable mind could differ in concluding that [Hempt's] calculation was inaccurate and not supported by the facts." Myers' Rule 1925(b) Statement, 6/1/20, at ¶5.

We have reviewed the record and find no indication that Myers claimed that Hempt's claim should be regard as a liquidated claim. Therefore, Myers' appellate issue is waived.[20] *See* Pa.R.A.P. 302(a), 1925(b)(i), (ii), (vii); *see generally Majorsky v. Douglas*, 58 A.3d 1250, 1257-58 (Pa. Super. 2012). In any event, we conclude that the trial court properly addressed Myers' compulsory non-suit motion in its Rule 1925(a) opinion and that its thorough

---

[20] We add that Myers' argument consists of a single paragraph of eleven lines that cites no authority clarifying its argument that Hempt presented a "liquidated claim." *See* Myers' Brief at 57-58; *see also* Pa.R.A.P. 2119.

discussion belies Myers' apparent assertion that Hempt presented a claim for liquidated damages claim. **See** Trial Ct. Op. at 21-24. Accordingly, no relief is due.

In sum, in Myers' appeal at 1009 EDA 2020, we affirm the trial court's ruling denying Myers' motions for summary judgment and post-trial relief concerning damages for (1) forming and placing concrete, (2) cold weather work, and (3) unpaid estimates. However, we conclude that the trial court abused its discretion in denying Myers' post-trial motion concerning damages for overtime for excessive handwork as the jury found on Question 3A of the verdict sheet. Accordingly, we remand this matter for a new trial limited to determine the damages for overtime for excessive handwork. **See Mader v. Duquesne Light Co.**, 241 A.3d 600, 614 (Pa. 2020) (holding that when the properly determined damages were fairy decided and sufficiently independent of the erroneously determined damages, a court may limit the scope of a new trial to the erroneously determined damages).

However, our decision that Myers is entitled to a limited remand for a new trial on damages for overtime for excessive handwork upsets the judgment entered in this case. Specifically, Myers requested a single judgment that reflected the moldings to aggregate the total verdict in favor of Hempt and the verdict in favor of Myers after calculating pre-judgment interest on both verdicts. For these reasons, we vacate the single $1,595,216 judgment entered in favor of Hempt and against Myers.

### Hempt's Cross-Appeal

Hempt presents the following question in its cross-appeal:

Since Myers had possession of more money since 2011 that it was awarded on its offset/counterclaim, is it entitled to prejudgment interest on the counterclaim?

Hempt's Brief at 1.

Hempt essentially asserts that the single judgment of $1,595,216 is inadequate because the jury's verdict should be read as a finding that Myers withheld from Hempt $62,000 more than Hempt owed Myers in backcharges. Hempt's Brief at 59. Hempt argues that the trial court should have molded the verdicts to add $62,000 to total verdict in Hempt's favor and against Myers and denied Myers' request for prejudgment on the verdict in Myers' favor and against Hempt.[21] *Id.* Hempt concludes that it is entitled to the entry of a judgment of $2,659,560, which it calculates based upon (1) jury's total verdict of $1,735,000 in favor of Hempt and against Myers, (2) the addition of $62,000 that Hempt claims Myers improperly withheld as backcharges, (3) the calculation of interest on $1,797,000, and (4) no offset for pre-judgment interest on the verdict in favor of Myers and against Hempt . *Id.* at 60-61.

As set forth above, Myers is entitled to a new trial limited to Hempt's damages for overtime for excessive handwork, and the single judgment of $1,595,216 must be vacated. Because our decision upsets the $1,595,216

---

[21] Hempt's initial brief to this Court lacks any citations to legal authority and requested that we affirm **or** direct the entry of judgment reflecting its alternative calculation of pre-judgment interest. *See id.* at 61. Hempt's reply brief contains a more developed argument with citation to case law.

judgment from which Hempt takes its cross-appeal, and which includes the calculations of pre-judgment interest due upon the prior jury's total verdict, we conclude that Hempt's cross-appeal is premature. Accordingly, based on our disposition, we decline to address these issues such that the parties may raise these issues before the trial court following remand.

Judgment vacated. Orders at 1009 EDA 2020 affirmed in part and reversed in part. Case remanded for a new trial on Hempt's damages for overtime for excessive handwork consistent with this memorandum. Hempt's cross-appeal at 1018 EDA 2020 dismissed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/21